# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell, AtLee and Senior Judge Haley
Argued by videoconference


JAMIE ALLEN SEAMSTER

                                                MEMORANDUM OPINION* BY
v.        Record No. 1193-19-2                  JUDGE JAMES. W. HALEY, JR.
                                                      JULY 13, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge

Heath L. Sabin (Sabin Law Office, P.C., on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Jamie Allen Seamster of receiving or

buying stolen goods, possession of a firearm after having been convicted of a felony, obtaining

money by false pretenses, selling stolen property valued at under $200, possession of

ammunition for a firearm after having been convicted of a felony, possession of a firearm while

possessing a Schedule II controlled substance, and possession of cocaine.  On appeal, Seamster

argues that the trial court erred in convicting him of both possession of a firearm by a felon and

possession of ammunition by a felon in violation of the double jeopardy clause where the two

charges "arose out of the same occurrence, and factual pattern, and were not separate incidents of

possession."  He also argues that the trial court erred in finding the evidence sufficient to convict

him of possession of a firearm by a felon "and/or" possession of ammunition by a felon where he

> did not have possession, either actual or constructive, of any
> firearm or ammunition, had no knowledge of a firearm and/or

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

ammunition being on the premises, and another person was person [sic]; and not all of firearms recovered were testified to have been designed to expel a projectile by means of an explosion.

Finally, Seamster contends that the trial court erred in finding that the evidence was sufficient to prove that he possessed a firearm while in possession of a Schedule I or II controlled substance "when the evidence did not establish that [he] was in possession of a controlled substance and did not establish[] that he possessed a firearm." Finding that the convictions for both possession of a firearm after having been convicted of a felony and possession of ammunition after having been convicted of a felony violate the double jeopardy clause, we reverse and remand the case to the trial court for reconsideration of the convictions and sentences for possession of a firearm and possession of ammunition in a manner consistent with this opinion. See Groffel v. Commonwealth, 70 Va. App. 681, 685 (2019), aff'd, 299 Va. 271 (2020). Because on remand, the Commonwealth must elect one conviction and sentence for Seamster's violation of Code § 18.2-308.2, for the reasons stated below, we consider the sufficiency of the evidence and find that the evidence was sufficient to support both convictions. We also find that the evidence was sufficient to prove that Seamster possessed a firearm while in possession of cocaine.

Background

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." McGowan v. Commonwealth, 72 Va. App. 513, 516 (2020) (quoting Gerald v. Commonwealth, 295 Va. 469, 472 (2018)). "In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." Id. (quoting Gerald, 295 Va. at 473).

In October and November 2017, Lawrence Bradshaw (Lawrence) was staying temporarily at a rehabilitation facility. While he was there, his daughters, Scottie Bradshaw (Scottie) and Kelly Bradshaw (Kelly) maintained their father's house in South Boston. On November 2, 2017, the family saw that a basement window was broken at the house, and a small oil lamp was near the window. Scottie and Kelly walked through the house with Halifax County Sheriff's Investigator Sam Edmonds. They pointed out items that were missing from the house, including bank bags containing paper money, coins, and "old money" Lawrence's grandfather had given him. Also missing were Crown Royal Bags containing coins, a television, a small "saloon gun," and five rifles — three "30/30" Winchester rifles, one .22 Winchester rifle, and a .22 caliber Henry rifle. Three of the Winchester rifles were commemorative. In addition, an "[H]ombre" six-shooter pistol was taken. Further, a National Rifle Association (NRA) backpack, assorted jewelry — including watches, rings, necklaces, and bracelets — collectible swords, and .22 caliber ammunition were missing. Scottie and Kelly testified that no one else had permission to enter the house or remove any items from the residence. Scottie stated that she knew Seamster and he dated her former good friend, Karen Conner.

Edmonds learned that someone had used "old money" for a purchase at a gas station. On November 3, 2017, he reviewed the surveillance video from the gas station and recognized Seamster as the person who passed the old currency. Edmonds also identified Seamster's vehicle in the video. Seamster had left a business card at the gas station that Edmonds recognized as a business associated with Seamster. Edmonds obtained the old currency from the gas station and showed it to Lawrence, who stated that it looked like money that was in his collection. Edmonds also determined that on October 31, 2017, Seamster had pawned a gold bracelet with a charm or medallion at a local pawn shop. Edmonds confiscated the items, which Lawrence identified as belonging to him.

On November 9, 2017, at 7:24 a.m., Edmonds and other officers executed a search warrant at Seamster's residence. At the time of the search, Chris Anderson (Chris), Seamster's cousin, was in the basement of the residence. Edmonds told Seamster that a house in the county had been burglarized, and he determined that Seamster had passed currency that was consistent with some of the money stolen in the burglary. He also told Seamster that he recovered some of the burglary victim's stolen jewelry that Seamster had pawned. Edmonds advised Seamster that they were searching for stolen items, some of which were as small as a buffalo nickel and included weapons. He asked Seamster if he could direct them to any stolen or possibly stolen items in his house. Edmonds testified that Seamster cooperated and identified "things that he believed possibly could have been what [they] w[ere] looking for."

Seamster first directed Edmonds to a bag labeled "NRA" that was on the living room floor, which Seamster said Chris had brought to the residence and could "possibly" have been stolen. The NRA bag contained a small revolver pistol that matched the description of one of the firearms that Lawrence had reported as stolen and Crown Royal bags containing old coins. Edmonds told Seamster that the items were similar to some of the stolen items and asked Seamster if there was anything else in the house that was possibly stolen. Seamster led Edmonds to a guest bedroom closet and pointed to a blanket wrapped in tape and told Edmonds that there were "weapons inside that blanket."[1] Edmonds also saw in plain view in the closet another rifle beside the blanket, and a sword. Inside the blanket were commemorative rifles that belonged to Lawrence and some loose ammunition. In a subsequent interview, Seamster told Edmonds that he had helped wrap the rifles in the blanket.

---

[1] On cross-examination, when asked if Seamster said weapons were "actually inside" the blanket, Edmonds testified that if he "recalled correctly," Seamster indicated that he "knew weapons were in that blanket," and he "helped wrap . . . that blanket up." Edmonds also stated that he "could be wrong" and "could have forgotten."

Seamster led Edmonds to what he identified as his bedroom. There, he told Edmonds that a weapon was inside his dresser that "possibly could have been stolen." In the second dresser drawer, Edmonds found a loaded SCCY Cobra .380 caliber pistol and a small gun that Lawrence later identified as his "saloon gun," that was smaller than a Derringer. An expert in the operation of firearms and ammunition testified that the .380 Cobra handgun was operable and capable of creating an explosion and expelling a projectile out of the end of the barrel.[2] Seamster claimed that the .380 handgun belonged to Chris but told Edmonds that he knew it was in his dresser drawer. Seamster did not indicate that he knew about the presence of the saloon gun in the drawer.

When Edmonds stated that he was also looking for jewelry, Seamster invoked his Miranda[3] rights, and officers arrested him and removed him from the property. The officers continued to search Seamster's house, and under his bed they found two safes. Next to the bed was a set of keys that opened one safe. This safe contained Seamster's social security card, birth certificate, and a Crown Royal bag with jewelry that Lawrence later identified as belonging to him. Edmonds found a gun box containing ammunition on an "end table" in Seamster's bedroom.[4]

In the kitchen, officers found two driver's licenses, one of which was voided, containing Seamster's name, his address, and business cards like the one Seamster had left at the gas station.

---

[2] This expert also examined .22 caliber rifles, several "pre-1958" 30-30 caliber rifles, 30-30 ammunition, and .22 long rifle ammunition recovered in the case. He stated that 30-30 rifles operated by putting a round into a magazine along the bottom of the barrel, and racking the lever, thereby loading a round and expelling an empty cartridge. He also testified that the 30-30 ammunition contained primer that sparked when the firing pin struck it, creating combustion, and expelling a projectile.

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

[4] Officers found other items in Seamster's bedroom that Lawrence identified as his.

The voided driver's license was the one Seamster had provided to complete the pawn transaction on October 31, 2017.

A few days after the search of his home, Seamster asked to speak with law enforcement. During his interview with Edmonds, Seamster claimed that Chris stayed at his house "off and on," and Chris also sometimes stayed at the "bullpen" near an auto mechanic shop. Seamster told Edmonds that Chris gave him "all of the things that [officers] found in his house," and "they had brought them from the bullpen over to his house." Seamster stated that he asked Chris where the items came from and Chris said he "had hit a lick" or had "done a lick," meaning that he had broken into a house. Seamster denied that he broke into Lawrence's house, but he admitted that he helped Chris move items from the bullpen to his house. Seamster also told Edmonds that Chis owed him money and paid Seamster in "old currency," and he bought some old currency from Chris.

Chris told Edmonds that he did not break into Lawrence's house or move anything into Seamster's house. He claimed that he happened to be at Seamster's house on the date of the search.

Based on items seen during the search of Seamster's house, Halifax County Sheriff's Sergeant Thomas Lewis, a special officer with the Virginia State Police assigned to the South Boston Regional Narcotic and Gang Task Force, obtained a search warrant for marijuana, cocaine, drug paraphernalia, packaging materials, and items "used to conceal drug activity." Lewis found suspected marijuana and scales on the kitchen counter in the house. He also found a baggie of suspected cocaine in the kitchen trash can. The dishwasher contained smoking devices, straws, and different items that appeared to be used for marijuana smoking. In the microwave located on the kitchen counter, Lewis found a plate with suspected cocaine residue, a cigarette pack containing a bag of cocaine, a straw, a $1 bill, and a credit card in Seamster's

- 6 -

name.  Lewis testified that dollar bills are sometimes used as a straw to sniff cocaine and the credit card could be used to cut the cocaine.  Laboratory analysis showed that the cigarette pack contained 0.7984 gram of cocaine.

Seamster, a convicted felon, testified in his defense and admitted that he sold the jewelry at the pawn shop, claiming that Chris gave him the jewelry because Chris owed him money.  Seamster stated that in October 2017, Chris had been staying at his house for three or four months, but Chris was also sometimes living at the "bullpen" where he worked.  According to Seamster, Chris often brought "stuff" in and out of his house as he moved around.  Seamster denied helping Chris move anything, stating that Chris put items in Seamster's truck and Seamster drove the truck to his house.

Seamster also testified that he had "never seen any guns in the closet" although he had "seen a sword in the closet."  He claimed that he did not help Chris wrap the rifles in the blanket and denied telling Edmonds that he had done so.  Seamster testified that he told Edmonds he did not see any guns in the house and Edmonds tried to "trick" him into admitting that there were guns in his home.  Seamster denied that he knew the gun was in the dresser drawer or that he told Edmonds there was a gun in his bedroom.  He testified that officers went into the room, exited it with the gun, and asked him, "What is this?"  Seamster stated that he told the officers the gun belonged to Chris, and he had "seen it before," but had never seen it in his house.  Seamster also claimed that Chris liked to hide things.

Seamster stated that he saw Chris with "some coins and stuff," and he asked Chris where he got the items.  He testified that Chris replied that he had "hit a lick," but Seamster believed Chris was joking because he had seen old coins and money at Chris's mother's house where Chris once lived.  Seamster also stated that Chris gave him the "old" money that he spent at the gas station.  Seamster testified that he had no idea that the items he directed Edmonds to during

the search or the jewelry he pawned belonged to Lawrence. He claimed that he did not have a credit card and denied any knowledge of the items found in the microwave. Seamster admitted that he put "some weed bowls and some weed" in the dishwasher but denied any knowledge of the cocaine.

On cross-examination, Seamster testified that he sometimes stayed with his girlfriend at another residence and Chris slept in Seamster's bedroom at his house. He acknowledged that this house was his main residence where he received his mail and kept his dogs and other items such as his safes and forms of identification.

Conner, Seamster's girlfriend of almost ten years, testified that Seamster sometimes stayed with her at her residence and that Chris was staying at Seamster's house around the time of October and November 2017. She testified that Seamster had owned his house for about four years. Conner stated that on November 6, 2017, she saw Chris hooking up a "big" flat screen television that looked "brand new." Conner also testified that Chris collected "old currency."

Kathy Spangler, Chris's mother, and Jennifer Anderson Moore, Chris's sister, both testified that Chris does not collect coins or old currency. Moore also stated that she had never seen Chris with a firearm.

The trial court expressly found Seamster's trial testimony incredible, noting it was not corroborated by other evidence in the case. Further, the trial court credited Edmonds's testimony concerning the statements Seamster made implicating himself in the case. The trial court also noted that when Edmonds told Seamster he had the search warrant and asked Seamster if he wanted to show him anything, appellant pointed out the NRA bag, which contained a firearm, the guest room closet containing firearms, and his dresser where firearms were located. Officers found the safe under Seamster's bed containing Seamster's identifying documents and some of

Lawrence's jewelry. The trial court found appellant guilty of all the charges. Seamster appeals the case to this Court.

Double Jeopardy

The Commonwealth concedes that Seamster may not be convicted of both possession of a firearm by a convicted felon and possession of ammunition by a convicted felon, stemming from the same instance of possession, pursuant to Groffel. Under settled principles, an appellate court may not accept even formal concessions of law without independently confirming their correctness. Logan v. Commonwealth, 47 Va. App. 168, 172 (2005) (*en banc*).

"We review de novo whether 'multiple punishments have been imposed for the same offense in violation of the double jeopardy clause.'" Groffel, 70 Va. App. at 687 (quoting Commonwealth v. Gregg, 295 Va. 293, 298 (2018)). In Groffel, the defendant, who had a prior felony conviction, possessed a cabinet containing "an AK-47 assault rifle," a shotgun, ammunition for the two firearms, and ammunition for a "30-30 rifle." Id. at 685. The trial court convicted him of two counts of possessing a firearm or ammunition after conviction for a felony, noting that the "separate charge for possession of ammunition was based on ammunition that did not match the types of firearms found with it." Id. at 686. This Court concluded that the trial court erred in imposing separate convictions for possession of a firearm and possession of ammunition, holding that "Code § 18.2-308.2 does not separately penalize the appellant's possession of firearms and ammunition at the same time in the shed." Id. at 694. Further, merely because "some of the ammunition in the appellant's possession did not pair with the firearms found with it does not justify separate convictions for simultaneous possession under the statute[.]" Id. at 695. We held that "the appellant should have been subject to only one punishment under Code § 18.2-308.2 for the firearms and ammunition[.]" Id.

Here, the Commonwealth charged Seamster with possession of a firearm by a convicted felon and possession of ammunition by a convicted felon. The evidence showed that during the search, officers found in Seamster's residence multiple firearms and ammunition in several locations. As in Groffel, we hold that the trial court erred in imposing both convictions and sentences for each under Code § 18.2-308.2 for simultaneous possession of a firearm and possession of ammunition because doing so is a violation of the double jeopardy clause. See id. Consequently, we reverse and remand this case to the trial court to allow the Commonwealth to elect one conviction and sentence for the violation of Code § 18.2-308.2. See id.

Sufficiency of the Evidence

Because upon remand, the Commonwealth must elect one conviction and sentence for Seamster's violation of Code § 18.2-308.2, we consider his assignments of error challenging the sufficiency of the evidence for those convictions. We also address his argument that the evidence failed to prove that he possessed a firearm simultaneously with cocaine.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Yoder v. Commonwealth, 298 Va. 180, 181-82 (2019) (quoting Smith v. Commonwealth, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Secret v. Commonwealth, 296 Va. 204, 228 (2018) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Pijor, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact

- 10 -

at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

"It shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm[.]" Code § 18.2-308.2(A).

Seamster argues that no evidence showed he was aware of the gun in the NRA bag; there was reasonable doubt as to whether he knew of the nature and character of the firearms or ammunition found in the blanket; the weapon that was in plain sight in the closet was not determined to have been designed, made, and intended to expel a projectile by means of an explosion; and the evidence failed to show he knew that the .380 pistol and saloon gun were in the dresser drawer. He further contends that the evidence failed to establish that he knew of the weapons or ammunition on the premises. Seamster asserts that even assuming he knew the firearms and ammunition were at his residence, "[h]e did not exercise dominion and control" over them.

"The sufficiency 'inquiry does not distinguish between direct and circumstantial evidence, as the fact finder . . . "is entitled to consider all of the evidence, without distinction, in reaching its determination."'" Rams v. Commonwealth, 70 Va. App. 12, 27 (2019) (quoting Commonwealth v. Moseley, 293 Va. 455, 463 (2017)). "When circumstantial evidence is involved, the evidence as a whole must be 'sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Id. (quoting Dowden v. Commonwealth, 260 Va. 459, 468 (2000)).

"Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the [firearm] and that it was subject to his dominion and

control.'" Hall v. Commonwealth, 69 Va. App. 437, 448 (2018) (quoting Logan v. Commonwealth, 19 Va. App. 437, 444 (1994) (*en banc*)). "A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." Id. (quoting Wright v. Commonwealth, 53 Va. App. 266, 274 (2009)). "Possession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." Atkins v. Commonwealth, 57 Va. App. 2, 23 (2010) (quoting Burnette v. Commonwealth, 194 Va. 785, 792 (1953)). "Ultimately, 'the issue [of what constitutes constructive possession] is largely a factual one' left to the trier of fact, not the appellate court." Bagley v. Commonwealth, 73 Va. App. 1, 28 (2021).

Here, the evidence showed that the firearms and ammunition were found in Seamster's residence. He testified that the house was where he received his mail and kept his dogs, safes, and items of identification. Seamster's girlfriend acknowledged that although Seamster sometimes stayed with her at her residence, the house where the firearms and ammunition were located had been Seamster's residence for about four years. In addition, when Seamster led Edmonds around the house, he identified one of the bedrooms as his own bedroom. Under the bed in Seamster's bedroom, officers found the safe containing Seamster's birth certificate, social security card, and some of Lawrence's stolen jewelry. The keys to this safe were next to the bed. See Shears v. Commonwealth, 23 Va. App. 394, 402-03 (1996) (evidence of personal documents in same room as drugs and firearms is a circumstance to consider in finding constructive possession of drugs).

Edmonds told Seamster that they were looking for stolen items, including weapons, and he asked Seamster if he could direct them to any stolen or possibly stolen items in the house.

Seamster then pointed to the NRA bag on the living room floor, stating that it could possibly be stolen. A small revolver pistol consistent with one of the guns Lawrence reported as stolen was inside the bag. Seamster then led Edmonds to the guest bedroom closet and pointed to the blanket wrapped in tape. Edmonds testified that Seamster told him there were "weapons" inside the blanket and that he had helped wrap them in the blanket. Although at trial, Seamster denied admitting that he knew the firearms were in the blanket or that he helped wrap them inside the blanket, the trial court expressly credited Edmonds's testimony concerning Seamster's incriminating statements. "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" Towler v. Commonwealth, 59 Va. App. 284, 291 (2011) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299 (1991)). "The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." Rams, 70 Va. App. at 26-27 (quoting Hamilton v. Commonwealth, 279 Va. 94, 105 (2010)).

The blanket contained four rifles and loose ammunition. A rifle was also in plain view in the same closet.[5] Considering that, in response to Edmonds's statement that he was looking for weapons and stolen items, Seamster pointed to the NRA bag containing a firearm and led Edmonds to the location of the firearms in the blanket, later stating that he had helped wrap the rifles in the blanket, the trial court could conclude that appellant was aware of the presence and

---

[5] Seamster argues that the evidence failed to show that the rifle in plain view in the closet was designed, made, and intended to expel a projectile by means of an explosion. However, even assuming that this argument is correct, it is of no consequence because the evidence showed that Seamster constructively possessed numerous other firearms in the case. "As we have often said, 'the doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" Butcher v. Commonwealth, 298 Va. 392, 396 (2020) (quoting Commonwealth v. White, 293 Va. 411, 419 (2017) (alteration omitted)).

character of these firearms and the ammunition in the blanket, and they were subject to his dominion and control.

Seamster argues that the evidence failed to prove he had knowledge of the .380 pistol and saloon gun found in the dresser drawer of his bedroom. Not only did Seamster identify this bedroom as his own bedroom, he led Edmonds to the bedroom, pointed to the dresser, and indicated that there was a weapon inside the dresser that "possibly could have been stolen." Clearly, Seamster's statement and his conduct in directing Edmonds to the dresser showed that Seamster was aware of the presence and character of the firearms found in the dresser drawer. Further, when Edmonds recovered the loaded .380 pistol, Seamster claimed that the gun belonged to Chris, indicating that he was aware of the nature and character of the gun. Possession may be joint and several and it mattered not whether Chris was the gun's owner. See Atkins, 57 Va. App. at 23. Seamster still could have jointly possessed a gun owned by Chris that Seamster knew was in his dresser drawer.

Although Seamster denied having any knowledge of the saloon gun, the trial court found that Seamster's trial testimony was incredible. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Speller v. Commonwealth, 69 Va. App. 378, 388 (2018). Further, Lawrence identified the recovered saloon gun as one of his stolen firearms. Officers also found in Seamster's bedroom a box of ammunition on an end table. From the evidence of appellant's conduct and statements, the trial court could conclude that Seamster was aware of the nature and character of the firearms in the dresser drawer and the box of ammunition in his bedroom.[6] The Commonwealth's evidence was competent, was not inherently incredible, and

---

[6] Seamster argues that the evidence failed to prove he exercised dominion and control over the ammunition and firearms located in his bedroom. However, at oral argument, he

- 14 -

was sufficient to prove beyond a reasonable doubt that appellant was guilty of possession of a firearm or possession of ammunition after having been convicted of a felony.

"It shall be unlawful for any person unlawfully in possession of [cocaine] . . . to simultaneously with knowledge and intent possess any firearm." Code § 18.2-308.4(A). Seamster concedes that this Court held in a one-judge order that the evidence was sufficient to prove that he possessed cocaine on the date of the search.[7] Officers found the cocaine in the kitchen on the same date that they located the firearms in Seamster's residence. As addressed above, the evidence was sufficient to prove that Seamster possessed the firearms. Therefore, the evidence was sufficient to prove that he possessed cocaine simultaneously with his possession of the firearms. Although Seamster asserts that the cocaine was found in a "separate room" from the firearms, the fact that the cocaine was recovered in the kitchen and the firearms were found elsewhere in the house is of no moment because the Commonwealth was required to prove only simultaneous possession of both the cocaine and firearms. Cf. Jefferson v. Commonwealth, 14 Va. App. 77, 80-81 (1992) ("The Commonwealth need not prove that [appellant] had ready access to either the gun or the [drugs] to establish 'simultaneous possession.'").

Conclusion

For the foregoing reasons, we hold that the evidence was sufficient to prove that Seamster possessed a firearm in violation of Code § 18.2-308.2 and possessed ammunition in

---

conceded that he had dominion and control over the items found in his bedroom. Therefore, this argument is of no moment.

[7] On December 15, 2020, in a one-judge order, the Court granted the three assignments of error addressed herein and denied Seamster's assignment of error contending that the evidence was insufficient to prove that he possessed cocaine. Seamster v. Commonwealth, No. 1193-19-2 (Va. Ct. App. Dec. 15, 2020). Seamster sought a three-judge review of the denied possession of cocaine assignment of error, and a three-judge panel of this Court affirmed the conviction for that charge for the reasons stated in the December 15, 2020 order. Seamster v. Commonwealth, No. 1193-20-2 (Va. Ct. App. Feb. 5, 2021).

violation of this statute.  However, the trial court erred in imposing two sentences under Code § 18.2-308.2 for simultaneous possession of a firearm and ammunition.  Accordingly, we remand this case to the trial court to allow the Commonwealth to elect one conviction and sentence for Seamster's violation of Code § 18.2-308.2.  See Groffel, 70 Va. App. at 695-96.  See also Andrews v. Commonwealth, 280 Va. 231, 288 (2010) ("In a typical case where a defendant has been subject to impermissible multiple punishments, 'the only remedy consistent with [the legislature's] intent is for the [trial court], where the sentencing responsibility resides, . . . to vacate one of the underlying convictions.'" (first and second alterations in original) (quoting Ball v. United States, 470 U.S. 856, 864 (1985))).  Cf. Gregg, 295 Va. at 301 (holding that convictions for involuntary manslaughter under Code § 18.2-154 and common law involuntary manslaughter violated the double jeopardy clause, and, on remand, the Commonwealth must elect between the two sentences then, following election, the trial court shall vacate the other sentence).  "Thereafter, the [trial] court shall vacate the other conviction and sentence under" Code § 18.2-308.2.  Groffel, 70 Va. App. at 696; see Gregg, 295 Va. at 301.

Affirmed in part and reversed and remanded in part.