# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## Floyd L. Burnette v. Commonwealth of Virginia.

April 20, 1953.

Record No. 4047.

Present, All the Justices.

The opinion states the case.

*Robert Lewis Young, Leith S. Bremner, William A. Wright,* for plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

This writ of error brings under review a judgment entered on a verdict finding the accused, Floyd L. Burnette, guilty of possession of burglarious tools, with intent to commit burglary and larceny, and sentencing him to confinement in the State penitentiary for a term of five years.

Defendant's first contention is that the statute (Sec. 18-159) under which he was indicted and convicted is unconstitutional and void.

This question was not raised in the lower court. However, it has been held in former decisions of this Court that the constitutionality of a penal act may be challenged on appeal, even though the question was not raised in the trial court. The basic reason for this holding is that if a statute creating a crime and fixing the punishment therefor is unconstitutional, there is no crime at all and no penalty to inflict. When this situation "is brought to the attention of the court at any place, in any way, whether by demurrer, plea, motion or otherwise, the case is at once dismissed, as there is no offense to be punished. It need not be specially pleaded. This rule applies to the appellate court as well as the trial court, although the point is made in the appellate court for the first time." *Pine* v. *Com.,* 121 Va. 812, 93 S. E. 652; *Dixon* v. *Com.,* 161 Va. 1098, 172 S.E. 277; *Hagood v. Com.,* 157 Va. 918, 162 S. E. 10; *Adkins* v. *Richmond,* 98 Va. 91, 34 S. E. 967.

[2] There has been no change in the statute since it was codified by the 1919 Code Revisors (section 4437, now section 18-159 of the 1950 Code). It is as follows: "If any person break

and enter the dwelling house of another in the nighttime with intent to commit a felony or larceny therein, he shall be deemed guilty of burglary, though the thing stolen, or intended to be stolen, be of less value than fifty dollars. If any person be guilty of burglary, he shall be punished with death or, in the discretion of the jury, by confinement in the penitentiary not less than five nor more than eighteen years. If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery, or larceny, he shall be deemed guilty of a felony and be punished by confinement in the penitentiary not less than five nor more than eighteen years. *The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.''* (Italics supplied)

Defendant concentrates his attack upon the last sentence of the statute (which, for convenience, has been italicized) and argues that it is unconstitutional because it makes the mere possession of common, ordinary tools of a trade or calling, by one other than a licensed dealer, *prima facie* evidence of intent to commit a crime. This conclusion he reaches by contending that the word ''such'' used in this sentence refers to the phrase ''any tools,'' etc. used in the preceding sentence. He further argues that on the sole basis of such innocent act, the statute compels the accused to be a witness against himself and thereby deprives him of the presumption of innocence, in violation of the fifth and fourteenth amendments to the Constitution of the United States and Article I, sec. 8 of the Constitution of Virginia, providing that no person shall be compelled in a criminal case to be a witness against himself nor be deprived of life, liberty or property without due process of law.

The statute, properly construed, violates none of these provisions of the Constitutions. As first adopted in 1878 (Acts 1877-78, p. 288) it read as follows: ''Any person who shall be guilty of burglary, shall be punished with death, or, in the discretion of the jury, by confinement in the penitentiary for a period not less than five nor more than eighteen years. If a person break and enter the dwelling-house of another in the night time, with intent to commit larceny, he shall be deemed guilty of burglary, though the thing stolen, or intended to be stolen, be of less value than twenty dollars. If any person have in his possession any tools, implements, or other outfit *known*

*as burglars' tools, implements, or outfit,* with intent to commit burglary, robbery, or larceny, he shall be deemed guilty of a felony, and on conviction thereof, shall be punished by confinement in the penitentiary not less than five nor more than ten years. The possession of *such* burglarious tools, implements, or outfit, shall be prima facie evidence of an intent to commit burglary, robbery, or larceny." (Italics supplied)

This act was incorporated in the Code of 1887, sec. 3704, without change. The 1919 Code Revisors changed it by transposing several sentences, included the common law definition of burglary, and omitted the descriptive phrase "known as burglars' tools, implements, or outfit" (since the word "burglarious" used in the last sentence adequately expressed the idea). They failed, however, to eliminate the word "such" preceding the word "burglarious." The word "such," as originally used, was descriptive and relative, and its antecedent was "known as burglars' tools, implements, or outfit." Elimination of this antecedent left the word meaningless; and the Revisors' failure to eliminate it also was obviously inadvertent. This conclusion is supported by their note to the section, in which it is said: "The phraseology of this section has been changed so as to include common law burglary in the definition of burglary under the statute, and there is a transposition of sentences at the beginning of the section, *but no material change has been intended.*" (Italics supplied)

The act has been in force for more than seventy-five years and, so far as we are advised, this is the first time its constitutionality has been attacked in this Court. This is doubtless due to the fact, that, before permitting the prosecution to invoke the statutory presumption, the trial courts have consistently required the Commonwealth to prove that tools found in the possession of persons charged with violating the statute are in fact such tools as are commonly used in breaking and entering.

■ Viewing the history of the statute and its purpose, proper construction requires that the word "such" be ignored or deleted. This principle of construing legislative acts is in accord with the following general rule: "It is the duty of the courts to give effect, if possible, to every word of the written law. But if a word or clause be found in a statute which appears to have been inserted through inadvertence or mistake, and which is incapable of any sensible meaning, or which is repug-

nant to the rest of the act and tends to nullify it, and if the statute is complete and sensible without it, such word or clause may be rejected as surplusage.'' Black on Interpretation of Laws, sec. 39, p. 83, quoted with approval in *Looney* v. *Commonwealth*, 145 Va. 825, 133 S. E. 753; *Howell* v. *Com.*, 187 Va. 34, 46 S. E. 2d 37.

This construction of the statute makes the meaning of the last sentence clear and consistent with the legislative intent to adopt a rule of evidence making possession of burglarious tools ,(by one other than a licensed dealer) *prima facie* evidence of intent to commit burglary, robbery or larceny.

■ In recent years the constitutionality of statutes, making proof of one fact presumptive or *prima facie* evidence of another fact, has been attacked on various grounds; namely, that they constitute a violation of the due process clauses of the State and Federal Constitutions; a denial of equal protection of the laws; an encroachment upon the powers of the judiciary; a compulsion of the accused to give testimony against himself; an impairment of the right of trial by jury; and a deprivation of the presumption of innocence to which every accused person is entitled. This subject has been discussed in numerous cases, text books and legal periodicals, many of which are cited in the Annotation in 162 A. L. R. p. 495.

In *Yee Hem* v. *United States,* 268 U. S. 178, 45 S. Ct. 470, 69 L. ed. 904, the constitutionality of an act of Congress was attacked upon the ground that it made possession of opium presumptive evidence that the opium had been illegally imported. In upholding the validity of the act, the court said: ''Every accused person, of course, enters upon his trial clothed with the presumption of innocence. But that presumption may be overcome, not only by direct proof, but, in many cases, when the facts standing alone are not enough, by the additional weight of a countervailing legislative presumption. If the effect of the legislative act is to give to the facts from which the presumption is drawn an artificial value to some extent, it is no more than happens in respect of a great variety of presumptions not resting upon statute. * * *

''The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make posses-

sion of the prohibited article prima facie evidence of guilt. It leaves the accused entirely free to testify or not, as he chooses.''

Code, section 18-159 is only one of many statutes making proof of one fact *prima facie* evidence of another fact. See Sections 4-57, 3-698 and 18-204 of the 1950 Code. Another rule of evidence, not dependent upon statute, is that possession of goods recently stolen is *prima facie* evidence of the theft of the goods. *Miller* v. *Com.,* 185 Va. 17, 37 S. E. 2d 864; *Kelly* v. *Com.,* 181 Va. 576, 26 S. E. 2d 63. Likewise, a mortal wound inflicted with a deadly weapon in the previous possession of the slayer, without any or upon slight provocation, is *prima facie* evidence of wilful, deliberate and premeditated killing. *Bailey* v. *Com.,* 193 Va. 814, 71 S. E. 2d 368.

The general rule approved by various decisions and legal articles is that the test of the constitutionality of such statutes making proof of a certain fact *prima facie* or presumptive evidence of another fact, is whether there is a natural and rational evidentiary relation between the fact proven and the ultimate fact presumed, and that the inference of one fact from proof of another must not be so unreasonable as to be purely arbitrary. To state the rule in positive terms, in order for such a statute to be valid, there must be some rational connection between the fact proved and the ultimate fact to be established.

Section 18-159 meets this test. The mere possession of burglarious tools is not a crime under the statute. It is possession with intent to use them to commit a crime. The tools or implements may be, and usually are, designed and manufactured for lawful purposes. But it is unusual for a person, on a lawful mission, to have in his possession a combination of tools and implements suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building, or to a vault or safe. All the statute does is to create a presumption of a criminal intent from proof of possession of burglarious tools or implements. Such a presumption is not conclusive; it cuts off no defense. It interposes no obstacle to a contest of all of the issues of fact, and relieves neither the court nor the jury of the duty to determine all of the questions of fact from the weight of the whole evidence. ''It is merely a rule of evidence and not the determination of a fact.'' *Barton* v. *Camden,* 147 Va. 263, 272, 137 S. E. 465. When possession is proven, the burden of going forward with the evidence shifts to the defendant, but

this does not shift the burden of ultimate proof, or deprive defendant of his right to have the jury instructed on the presumption of innocence.

■ Defendant's next contention is that the evidence is insufficient to prove possession by him of burglarious tools.

The evidence for the Commonwealth is that on January 19, 1952, from 6:00 p. m. until after 10:00 p. m., defendant and one Walker were seen in an automobile parked in the vicinity, and a part of the time in front, of a grocery store in the town of Tappahannock, where the manager was counting money. It was a cold midwinter night. Shortly after 10:00 p. m. they drove the car out of town to a place or places unknown to the Commonwealth. In Januray 20, at approximately 3:45 a. m. they returned to Tappahannock, drove slowly around in the vicinity of the same store for approximately thirty minutes, a part of the time out of sight of the officers. They finally drove out of town over the Tappahannock bridge where they were overtaken by the officers and arrested.

On searching the car, the officers found under that part of the front seat where the accused was sitting a loaded 32-caliber Colt's blue steel revolver, two new 10 inch hacksaw blades in a brown paper bag, and one pair of white cotton gloves; in the trunk one 36 inch pick, one 30 inch wrecking bar; one 3 pound sledge hammer; one 18 inch screw driver; one two-cell flashlight, one ½ inch steel drill bit, and one 7/16 inch steel drill bit; in the glove compartment four ¼ inch steel drill bits; and on the front seat between defendant and Walker, one pair of work gloves with buck palms and cotton backs. The lid to the trunk was slightly raised and held open by the pick handle. The key to the trunk was in the lock.

At the time of the arrest defendant and Walker were dressed in work clothes and leather jackets. Neither was wearing a hat or overcoat, though their hats were in the back of the car. Upon being asked by the officers who owned the pistol, Walker pointed his finger at defendant and said "It's his." Defendant at the time admitted that it was his and stated that he had "borrowed it from a man in Richmond by the name of Evans * * * because someone had been fooling around" his "garage and stealing his oil." Later defendant denied making this statement to the officers. Walker told the officers, in the presence of defendant,

that he owned the car and all the articles found therein except the pistol.

Joseph A. Brooks, a witness for the Commonwealth, testified that he had been a police officer for twenty-three years and, as a detective sergeant for the past ten years, had been in charge of investigating house breaking and safe cracking in the city of Richmond; that the tools found in the car were the type of tools commonly used by burglars in house breaking and safe cracking. He described the use of such tools by burglars and house breakers and, among other things, said that the hacksaws were used to saw pieces of metal and iron bars in two, and in the place of holders or handles for the blades, pieces of cloth or corrugated paper were placed over them to prevent the blades from ripping the hand, and that gloves were worn by burglars to avoid leaving finger prints.

It is true that all the articles found in the car, including the pistol, were designed for, and adaptable to, lawful uses, but the uncontradicted evidence is that they were implements and tools commonly used by house breakers and safe crackers. This proves that they were "burglarious tools" within the meaning of the statute. *State* v. *Hefflin*, 338 Mo. 236, 89 S. W. 2d 938, 103 A. L. R. 1301.

But this alone does not establish defendant's guilt. The statutory crime with which defendant is charged consists of two essential elements: (1) possession of burglarious tools; and (2) an intent to commit burglary, robbery or larceny therewith. The burden was upon the Commonwealth to prove possession of such tools by defendant beyond a reasonable doubt. The statute makes possession *prima facie* evidence of the criminal intent.

Possession and not ownership is the vital issue. Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly. 9 Am. Jur., Burglary, sec. 87, p. 282; 12 C. J. S. Burglary, sec. 69, p. 764.

Use of burglarious tools by two or more engaged in a joint enterprise was held in *Com.* v. *Robinson*, 242 Ky. 98, 45 S. W. 2d 844, to constitute constructive possession within the meaning of a statute similar to the Virginia statute, although actual custody of the tools at the time was in an accomplice.

Proof of possession of burglarious tools raises the statutory

presumption of criminal intent, but this presumption cannot be invoked until there is proof of possession. The Commonwealth did not prove that defendant and Walker had conspired to commit a crime, or that defendant had committed any criminal act. The movements of the car in question were such as to arouse suspicion that preparation was being made to commit a crime, but mere suspicion, however strong, is not sufficient to establish criminal intent or the commission of a crime. Guilt cannot be established by mere association. An inference cannot be drawn from a presumption, but must be founded upon some fact legally established. See Annotation in 103 A. L. R., p. 1313.

The testimony of defendant (the only witness for the defense) is in direct conflict with most of the pertinent testimony of the witnesses for the Commonwealth. But even if it be conceded, as contended by the Commonwealth, that his testimony is incredible, the Commonwealth failed to prove beyond a reasonable doubt that defendant had possession and control, joint or otherwise, of the burglarious tools found in the car. This failure is fatal to the Commonwealth's case. It is, therefore, unnecessary to discuss the remaining assignments of error.

The judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*