**Orvil RICHARDS, Petitioner,**

v.

**J. D. COX, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 69-C-71-R.**

United States District Court
W. D. Virginia,
Roanoke Division.

Aug. 27, 1969.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This proceeding comes before the court on a petition for habeas corpus filed *in forma pauperis* by Orvil Richards a prisoner of the State of Virginia pursuant to the provisions of 28 U.S.C.A. § 2241. The petition was originally filed in the United States District Court for the Eastern District of Virginia and was ordered transferred to this court by order dated June 30, 1969. Upon its receipt by this court on July 9, 1969, said petition was duly filed.

Petitioner is presently serving a two year sentence in the Virginia State Penitentiary pursuant to his conviction on September 27, 1968, in the Hustings Court of the City of Roanoke, Virginia for possession of burglary tools.

After being indicted by a grand jury for the felony of possession of burglarious tools, petitioner upon advice from private counsel, entered a plea of not guilty, waiving trial by jury. Upon the introduction of evidence by both parties, and after petitioner's motion to strike the evidence had been properly made, overruled and excepted to, the Hustings Court of the City of Roanoke found Orvil Richards guilty of the aforesaid crime, being sentenced for a two-year period in the Virginia State Penitentiary. After a lengthy hearing was held on October 23, 1968, the Hustings Court overruled petitioner's motion to set aside the verdict. Shortly thereafter, Richards, with court-appointed counsel, filed with the Virginia Supreme Court of Appeals a Notice of Appeal and Assignment of Error. Upon a mature consideration of the transcript of the record, the Virginia Supreme Court of Appeals affirmed the judgment of the Hustings Court on April 29, 1969.

Thus petitioner has exhausted his state remedies in compliance with the provisions of 28 U.S.C.A. § 2254 as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

This court has given careful consideration to the transcript of this case in making a determination of petitioner's claims.

Petitioner Richards alleges violation of his Fourth Amendment rights against an illegal search and seizure of his automobile, and secondly, that his conviction, by the Hustings Court of the City of

Roanoke, was contrary to the law and evidence presented by the Commonwealth at the trial.

At this juncture it seems necessary to point out the relevant facts. The petitioner was located, at approximately 1:30 in the morning, next to the GMC Dickerson Building in Roanoke by patrol officer Mills. Upon approaching Richards' automobile, the officer saw and heard the petitioner throw something metallic into the trunk of his car, close the trunk door, then proceed to get into the car, after explaining to the officer that it had battery trouble, and driving off. Officer Mills followed Richards a short distance only to commence his routine patrolling duties that night. Within a very short time (ten minutes) upon returning to the GMC Building for another inspection, Officer Mills again located petitioner's car parked in the same position as he found it previously. Again, the trunk door was up, only to find the petitioner jumping into his car, upon seeing said officer, and speeding off. Officer Mills, prior to stopping Richards within a few blocks, recognized the petitioner as a previously convicted "safe man". Upon stopping Richards, the officer called for additional assistance with Lieutenant Stanley and Sergeant Mc-Graw arriving shortly thereafter. The officers conferred with each other on the matter, then Lieutenant Stanley took charge of the automobile while the petitioner and the officers went back to the GMC Building for an inspection. The manager of the building assisted in the inspection, after being informed by the officers of the existing situation. The investigation showed that no actual breaking and entering had taken place. Upon a search of the petitioner's car by Lieutenant Stanley, certain types of tire changing tools were found in the trunk. The testimony shows that such "tools" were very seldom found or used on automobiles for such purposes, although they could be. The court notes that no search warrant was obtained prior to the actual search and discovery of these "tools" in petitioner's car. After the discovery of the "tools", the petitioner was then charged with the possession of burglary tools.

This court is well aware of the significant developments that have taken place in the vital constitutional area of search and seizure, as enunciated by the Fourth Amendment. Undoubtedly, the main teaching of the Fourth Amendment in this regard is not that the Constitution forbids all searches and seizures, but rather only "unreasonable searches and seizures". Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). This court in making a determination of the "reasonableness" question must consider certain basic tenets. As the Supreme Court recently stated in Camara v. Municipal Court, 387 U.S. 523, 534–535, 536–537, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the first tenet is to "focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen" because there is "no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails".

■ Of ultimate concern in providing for this "balance" focuses on whether there existed "probable cause" to make the search and seizure, and secondly, whether this search is incident to a lawful arrest. Taking the foregoing points in inverse order, this court maintains that there was a lawful arrest of the petitioner. The Supreme Court in a recent case, Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1967) commented on this point in saying that "it must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person". Surely, given the existing factual situation, we would not question whether petitioner was under restraint of "his freedom to walk away". The assertion that the arrest was subsequent to the search, thus rendering the evidence of the

burglarious tools inadmissible, is without foundation.

The Supreme Court has consistently followed the concept of "probable cause" in its determination of the constitutionality of such arrests where a warrant hasn't been issued.[1] This court is in accord and follows such a view. As stated in Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) the

> rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave lawabiding citizens at the mercy of the officers' whim or caprice.

A mere re-reading of the aforementioned factual situation shows the clear existence of "probable cause" on the part of Officer Mills to restrain petitioner's "freedom to walk away", or as in this case, his freedom to drive away. Thusly, this court finds a lawful arrest of petitioner Richards and the admissibility of evidence discovered incident to such arrest.

 Petitioner maintains that the search was unconstitutional because the automobile was out of his possession during the actual discovery of the "tools". Richards relies on a 1963 Supreme Court case, Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1963) where the Court said the search, without a warrant, was illegal because it was performed at a time and place "remote" from the arrest. The Court continued in saying that "once an accused is under arrest and in custody,

then a search made at another place, without a warrant, is simply not incident to the arrest". Although petitioner is correct in his legal principles, the facts of the case presently before this court do not substantiate his reliance on these contentions. The automobile was exactly where it was stopped, there being only a very short interval of time lapsing before it was actually searched. The fact that Richards was not physically present does not render the search illegal in this case. The automobile was constantly under the supervision of Lieutenant Stanley, making its actual contents those that were in the automobile while Richards occupied it. There could not have been some independent outside party changing its contents. This court looks to the "contemporaneous" search concept as its guidelines.

> Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Preston v. United States, *supra*, 376 U.S. at 367, 84 S.Ct. at 883.

Two earlier Supreme Court cases extended this right of search and seizure to things that were not only under the accused's "immediate control", Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1925), but also to the "place where the accused was arrested". See Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Although Richards might plausibly argue that the car was not in his immediate control, as he was about two blocks away, the petitioner is however without foundation on the second prin-

---

1. This is not to say that we wander from the path making it necessary, wherever "practicable", for the police, via the warrant procedure, to secure prior judicial approval for a subsequent search and seizure. As the Supreme Court stated in Terry v. Ohio, *supra*, at page 21, 88 S.Ct. at page 1880:

"The scheme of the Fourth Amendment becomes meaningful only when it is as-

sured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances."

ciple as the "place where the accused was arrested" was exactly the same.

■ The fact that another officer, other than the arresting officer, made the search is not of any consequence in this case. Lieutenant Stanley, upon arriving at the place of arrest, was completely informed of the whole situation by Officer Mills, and only subsequent to being so informed, did he perform any type of search.

■■ Petitioner's second allegation, namely that his conviction was contrary to the law and evidence presented during the trial stages, cannot be accepted by this court. Under the Virginia Statute, Va.Code Ann. 18.1–87, possession of "any tools, impediments or outfit, with intent to commit burglary, robbery or larceny * * * shall be prima facie evidence of an intent to commit burglary, robbery or larceny". The statute couples "possession" of such tools with the "intent" to commit a crime.[2] The mere possession of such burglarious tools, without more, is not in itself considered a crime under the statute. However, it is encumbent upon the Commonwealth to prove that these "tools" were under the control of the accused. The testimony given in the trial court substantiates that the petitioner was in possession of these tools.

We cannot stop here for possession creates only a prima facie presumption of the criminal intent of the accused which is not conclusive. Once possession is proven, "the burden of going forward with the evidence shifts to the defendant (Richards), but this does not shift the burden of ultimate proof, or deprive defendant of his right to have the jury instructed on the presumption of innocence". Burnette v. Commonwealth, 194 Va. 785, 75 S.E.2d 482, 486 (1953). In the case at bar, we are convinced, after a thorough examination of the record that its judgment was correct. The trial court (Richards having waived trial by jury) was clearly knowledgeable of the burden that was placed on the accused, namely, "an explanation sufficiently credible to be accepted by a jury (in this case, the judge)," Nance v. Commonwealth, 203 Va. 428, 124 S.E.2d 900, 904 (1962).

The facts in the case at bar, taken in their totality, raise more than a mere suspicion of guilt.[3] As Justice Spratley commented in the case of Nance v. Commonwealth, *supra*, 124 S.E.2d at 904, "this is not a case where inferences are founded on inferences; but a case where inferences may be drawn from proven facts".

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to federal habeas corpus relief based upon any of his claims. It is therefore adjudged and ordered that the writ be denied and the petition dismissed.

The clerk is directed to certify a copy of this opinion and judgment to the petitioner and to the respondent.

2. Petitioner relies on the fact that these so-called "tools" were nothing more than "ordinary tire changing tools" and thus not within the statute. In Burnette v. Commonwealth, 194 Va. 785, 75 S.E.2d 482, 487 the Supreme Court of Appeals for the State of Virginia stated, relying on State v. Hefflin, 338 Mo. 236, 89 S.W. 2d 938, 103 A.L.R. 1301, that although such tools may be "adaptable to lawful uses", uncontradicted evidence showing that they could be used for other purposes brings them into the scope of burglarious tools. Also see, Commonwealth v. Riley, 192 Ky. 153, 232 S.W. 630, 633 (1921) where the court ex-

pressed the view that "if the tools are such that they may be used to commit burglary, and the circumstances be such as to lead a reasonably prudent man to believe beyond a doubt that the intention of their possessor was to use them for that purpose the offense is complete."

3. The court in Nance v. Commonwealth, *supra*, 124 S.E.2d at 904, citing Duty v. Commonwealth, 137 Va. 759, 119 S.E. 62 (1923) viewed an attempt to evade arrest by flight, at excessive speed, from the scene to be "one of a series of circumstances from which guilt may be inferred". Also see, Anderson's Case, 100 Va. 860, 863, 42 S.E. 865 (1902).