COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Malveaux and Chaney
Argued at Lexington, Virginia

AMY LYNN CHILDRESS

                                                        MEMORANDUM OPINION* BY
v.         Record No. 1374-22-3                          JUDGE GLEN A. HUFF
                                                        APRIL 9, 2024

JIMMIE DEWITT CHILDRESS, III

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael S. Irvine, Judge Designate

Amy Lynn Childress, *pro se*.

Jim D. Childress, III, *pro se*.

Amy Lynn Childress ("wife"), *pro se*, appeals a final decree of divorce, entered by the

Circuit Court of the City of Lynchburg ("circuit court") on September 9, 2022.  Wife argues that the

circuit court erred by appointing a guardian ad litem and a committee for her and by awarding

"essentially" all the marital assets, including the former marital residence, to Jimmie DeWitt

Childress, III ("husband").  She further alleges that the circuit court failed to consider the "relevant

statutory factors" for equitable distribution and erred by accepting husband's statements about his

finances, imputing $60,000 as income to her, and denying her request for spousal support.  She

finally asserts that the circuit court was "required to make a custody and visitation determination"

because the City of Lynchburg Juvenile and Domestic Relations District Court (the "JDR court")

was "divested of jurisdiction once the divorce proceeding" began.  For the following reasons, the

circuit court's judgment is affirmed.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Husband and wife married on September 15, 2012, and three children were born of the marriage. Husband is an attorney who owns a law firm; wife worked at the law firm. On January 11, 2021, the parties separated. Shortly thereafter husband filed petitions for custody and visitation in the JDR court. A few weeks later, on February 17, 2021, husband filed a complaint for divorce on fault grounds in the circuit court. On March 26, 2021, wife filed an answer and a counterclaim along with a motion for pendente lite relief, in which she requested that the circuit court hear the issues of custody, visitation, spousal support, attorney fees, and preservation of the marital estate.[2] Finally, on March 30, 2021, wife noticed a pendente lite hearing for April 30, 2021. At a motions hearing on April 13, 2021, husband objected to the circuit court hearing the custody and visitation matters because the JDR court had already heard those matters and entered a temporary order on March 16, 2021, awarding wife supervised visitation only, with a review hearing already scheduled for July 26.

The circuit court declined to hear the custody and visitation matters because the JDR court had entered a temporary order and those matters were "still pending in the lower court after a full hearing." On the remaining matters, the circuit court issued a pendente lite order, finding husband's

---

[1] "When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Shah v. Shah*, 70 Va. App. 588, 591 (2019) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). Here, husband is the prevailing party, so we consider all the evidence in the light most favorable to him.

[2] Thereafter, husband filed motions for pendente lite relief and requested exclusive use and possession of the former marital residence, financial assistance with child support and payment of the parties' debts, and ordering wife to participate in a vocational rehabilitation evaluation.

annual income to be $260,000, imputing $30,000 in annual income to wife, and ordering husband to pay wife $3,422 per month and maintain health and dental insurance for her.[3]

On September 22, 2021, the circuit court entered a pre-trial order which noted that the contested issues were child support, spousal support, equitable distribution, grounds for divorce, and attorney fees and costs.[4]  The pre-trial order also established a discovery deadline of November 1, 2021, and directed the parties to exchange exhibits before the final hearing.[5]  After "multiple good faith efforts" to resolve discovery disputes—including a motion to compel—husband sought sanctions against wife for her failure to comply with discovery.

Following a hearing, the circuit court granted husband's motion "to prohibit [wife] from introducing evidence that would contest any evidence that [husband] may present at trial that was requested in discovery."  The circuit court noted that wife's "ability to introduce evidence at trial shall be limited."  At this same hearing, husband requested the court's assistance to avoid foreclosure on the house where wife was living.  Before their separation, the parties had formed Childress Sisters Investments, LLC, and obtained a 12-month interest-only mortgage to purchase the property.[6]  The mortgage's term was about to expire and husband could not extend it because wife refused to sign the necessary paperwork; thus, the bank initiated the foreclosure process.  To preserve the asset, husband asked the circuit court to appoint a special commissioner for wife to sign the paperwork necessary to extend the loan and stop the foreclosure.  Finding that there was "equity

[3] The pendente lite order awarded wife $4,710 per month in spousal support but calculated her monthly child support obligation to be $1,288.  Accordingly, the total husband owed wife each month was $3,422.

[4] Husband subsequently moved, under Code § 20-121.02, to grant the parties a divorce based on living separate and apart for more than 12 months.

[5] Due to a change in wife's counsel, the parties agreed to extend the discovery deadline to January 15, 2022.

[6] The parties had intended for the home to be used as a law office for husband.

- 3 -

in the home that would be subject to loss if the loan extension [wa]s not signed," the circuit court appointed Janet Moran as special commissioner, over wife's objection, to sign the necessary documents on wife's behalf.[7]

Before this hearing ended, counsel asked the circuit court for an in-camera conference. Following discussion off the record, the circuit court stated that it had "become apparent" that there were "some perhaps deeper issues involved in this case." Based on what had been represented to the circuit court, its "experience in conducting hearings on several different occasions over the last year," and the fact that the JDR court had appointed a guardian ad litem ("GAL") for wife, the circuit court found it "proper" to appoint a GAL "to defend the interest or to represent" wife in the divorce proceeding.[8] Thus, the circuit court appointed Moran to also serve as wife's GAL "in future hearings regarding equitable distribution and spousal support." Wife's motion to reconsider the appointment was denied. Finally, the circuit court continued husband's motion to reduce or terminate spousal support to the final hearing, scheduled for July 20, 2022.[9]

After the court appointed Moran as GAL, wife's counsel moved to withdraw, the circuit court granted the motion, and wife proceeded *pro se* for all remaining proceedings. The circuit court also entered a "Scheduling Order," requiring the parties to submit their lists, including values, of marital property and debt, hybrid property and debt, and separate property, as well as their income and expenses, by July 13, 2022. Husband timely filed his equitable distribution charts and income and expense statement; wife did not file anything.

---

[7] Moran had already been appointed as wife's guardian ad litem in the pending custody and visitation matters.

[8] Husband also made an oral motion to appoint Moran as committee for wife. The circuit court took this motion under advisement and suggested that he file a written motion with notice to wife.

[9] The circuit court dismissed wife's motion for show cause against husband for failure to pay spousal support because it was "deficient" under Code § 8.01-274.1.

On Wednesday, July 20, 2022, the circuit court began the equitable distribution hearing noting that wife had told the Clerk that she was ill; the bailiff checked her temperature, and she did not have a fever.  Next, the circuit court denied wife's motion to consolidate the divorce matter with her appeal of the JDR court matters and her motion to continue the matter and reconsider previous orders.  Turning to the substance of the hearing, husband presented evidence that after the parties' separation his business and income declined, which he attributed to wife's fake Google reviews about his legal services and social media posts against him.[10]  He also testified that his expenses increased after the parties' separation, especially because wife used his credit card without his permission.

In the middle of husband's testimony, wife interrupted and announced that she needed to go to the restroom because she was "going to get sick."  After a break, wife requested a continuance because she was "actively sick."  Husband expressed skepticism, noting wife's "five motions that were filed in the last few days, all of which were trying to push this hearing off."  Over husband's objection, the circuit court agreed to continue the matter—mid-hearing—to the following Monday, July 25, 2022, because husband's counsel was not available on Thursday and the parties were scheduled for a show cause hearing in the JDR court on Friday.[11]  At the Friday JDR court hearing, the JDR court found that wife had violated its orders by posting about the case on social media.  She was found in contempt on 19 of the 23 show cause orders and sentenced to 10 days in jail on each charge.  The JDR court ordered the sentences to run consecutively.

---

[10] Husband later testified that wife was posting to multiple social media outlets several times a day.  On one day, he received 47 notifications from Google about new reviews; all of the reviews were fake, one-star reviews, which husband testified was "enough to just kill a small business."

[11] There were 23 outstanding show cause motions pending against wife.

When the circuit court reconvened on Monday, July 25, wife was incarcerated on the JDR court's contempt finding. To allow this matter to proceed, husband moved for a committee for wife under Code § 53.1-223.[12] After reviewing the statute, the circuit court appointed Bevin Alexander, an attorney in good standing, as committee for wife. Wife objected to the appointment, and the matter was again continued.

Wife was not present at the second day of the equitable distribution hearing. Alexander informed the circuit court that she had been released from jail and that he had tried unsuccessfully to contact her. He arranged for posted service at wife's last known address. Moran also had not had any contact with wife, who previously told Moran "to stay away from her, not be in touch with her and not contact her [sic]." "[O]ut of an abundance of caution," the circuit court continued Alexander's appointment as wife's committee in case she was incarcerated "somewhere" and because no one knew her whereabouts.

The circuit court declined to continue the matter further because the case had been pending "for a long time" and the delays were attributable to wife "for one reason or the other." The circuit court found that not proceeding would deprive husband "of his right to go to court." After noting that wife was "still" *pro se* and had an "obligation" to notify the court of any change in her address,

---

[12] Code § 53.1-223 provides that

> No action or suit on any claim or demand, except suits for divorce, . . . and actions to establish a prisoner's child support obligation, shall be maintained against a prisoner after judgment of conviction and while he is incarcerated, *except through his committee*, unless a guardian ad litem is appointed for the prisoner pursuant to § 8.01-9, or an attorney licensed to practice law in the Commonwealth has entered of record an appearance for such prisoner. However, in any suit for divorce instituted against a prisoner, the court shall appoint a committee prior to any determination as to the property of the parties under § 20-107.3.

(Emphasis added).

the circuit court found that Alexander had "done everything that can be done to find her" and notify her of the proceeding.

Husband resumed his presentation of evidence for equitable distribution and support. He testified about the tax assessment values for the former marital residence and the other home owned by the LLC where wife resided.[13] Husband also testified about the parties' other assets and debts, noting that their debts exceeded their assets. To satisfy some of their debts, husband asked the circuit court to award him "as many assets as possible," which he could then liquidate and use to pay off the debts.

Husband finally testified about health insurance, work-related childcare expenses for the children, and his income from his business. Unaware of whether wife was working, husband believed that she had the capacity to earn income. According to husband, wife previously had earned $60,000 per year when they met and when they started his law firm; she also had earned a master's degree during their marriage.

After hearing all the evidence, wife's committee reported that there was not "a lot of dispute" about the assets and debts because the parties were "insolvent as a practical matter." The committee agreed with husband's assessment that he needed to liquidate as many assets as possible. The circuit court directed husband to prepare proposed findings of fact and conclusions of law for wife's committee and GAL to respond to and permitted him to present a proposed order, if everyone agreed. Following the equitable distribution hearing, wife notified the circuit court that she was

---

[13] Wife's committee cross-examined husband about the homes' values and offered into evidence tax assessments and sale histories from comparable homes. Husband agreed that there was a "significant difference" between the sales price and tax assessment for homes on his street. He also explained that the properties selected by the committee did not compare to the former marital residence because unlike his home, the selected properties were in "pristine condition" and had more bedrooms and bathrooms.

unaware of the hearing until three days after its conclusion when she arrived at her home and saw the posted notice.

Husband scheduled a hearing to present the final decree of divorce, which both wife's committee and GAL had endorsed. Wife objected and requested a continuance. At the hearing to present the final decree, the circuit court advised the parties that it was not hearing evidence. Instead, the sole purpose of the hearing was to notify wife of the presentation of the final decree and provide her with an opportunity to endorse it or object to it. The circuit court overruled wife's objections to the entry of the final decree and noted her exception to the court's ruling. The circuit court then entered the final decree, which granted husband a divorce based on the parties living separate and apart for more than one year. With the exception of the parties' country club stock and certain tangible personal property, the circuit court awarded husband all the marital assets and ordered that he was responsible for all the marital debt. To "equalize the distribution," the circuit court also ordered wife to pay husband $96,215, as well as $9,225 for her half of the IRS debt that was incurred after she refused to sign joint tax returns. The total sum owed to husband was "in the nature of support," because husband was "going to retire enormous debts for which [wife wa]s mostly responsible due to her refusal to work and her lavish spending practices during the separation using the credit cards of [husband] and [his] business, plus her refusal to sign the joint tax return." Further, after considering the Code § 20-107.1(E) factors, the circuit court terminated husband's spousal support obligation to wife and found that he owed no arrearages. The circuit court finally imputed $30,000 income to wife, as it had during the pendente lite hearing, and calculated her child support obligation to be $801 per month, with an arrearage totaling $6,408.

Following the entry of the final decree of divorce, wife noted her appeal and unsuccessfully filed several post-trial motions seeking reconsideration and vacatur of the final decree.[14] On appeal,

---

[14] The circuit court also granted wife's committee's motion to be discharged.

wife challenges the circuit court's appointments of a GAL and committee for her, its equitable distribution and support rulings, and its refusal to divest the JDR court of its jurisdiction regarding custody and visitation.

## ANALYSIS

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "In challenging the court's decision on appeal, the party seeking reversal bears the burden to demonstrate error on the part of the trial court." *Id*. at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)).

### I. Appointments of the GAL and Committee

Wife argues that the circuit court violated her due process rights by appointing the GAL "on a mere request by the husband's counsel and its own motion" and the committee when wife was incarcerated for only a "short period of time" and had not been convicted of a felony. Wife contends that she was "not a person under a disability" who required the appointment of a GAL and asserts that the circuit court had "no authority to make such an appointment." Likewise, she argues that the circuit court did not have the authority to appoint the committee because she had not been convicted of a felony. Wife further alleges that the committee's appointment should have ended upon her release from incarceration. Wife claims that because of these appointments, she was denied due process and her right to present her case.

Assuming without deciding that the circuit court erred in appointing the GAL and committee for wife, we find that any error was harmless. "When it plainly appears from the record and the evidence . . . that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed." *Moore v. Joe*, 76 Va. App. 509, 516-17 (2023) (alteration in original) (quoting Code § 8.01-678). A "non-constitutional

error is harmless 'if, when all is said and done, the error did not influence the [factfinder], or had but slight effect.'" *Spruill v. Garcia*, 298 Va. 120, 127-28 (2019) (quoting *Commonwealth v. Swann*, 290 Va. 194, 201 (2015) (per curiam)).

The circuit court appointed the GAL and the committee to protect wife's interests during the divorce proceedings. The circuit court explained that the GAL was there "to provide help to the extent it appears to be necessary and to the extent that [wife] needs and expresses a desire for help." After their appointments, the GAL and the committee appeared at all the circuit court proceedings, except for the presentation of the final decree that each had already endorsed. Indeed, although wife was not at the final day of the evidentiary hearing, the committee cross-examined husband and presented evidence on her behalf.

Moreover, wife's due process rights were not violated by the appointments. "All the authorities agree that 'due process of law' requires that a person shall have reasonable notice and a reasonable opportunity to be heard before an impartial tribunal, before any binding decree can be passed affecting his right to liberty or property." *Tidwell v. Late*, 67 Va. App. 668, 687 (2017) (quoting *Menninger v. Menninger*, 64 Va. App. 616, 621 (2015)). The record reflects that wife had notice of the hearings and was present at most of them. Wife had an opportunity to be heard and proceeded *pro se* after her second attorney withdrew. She filed numerous motions and presented arguments to the circuit court. Considering the totality of the record, this Court concludes that wife received all the process due her, and any error by the circuit court in appointing the GAL and committee is harmless.

## II. Equitable Distribution

For the first time on appeal, wife raises specific arguments challenging the circuit court's equitable distribution award. She complains that the circuit court awarded husband "essentially . . . all of the matrimonial assets" and required her to pay him $96,215. She further alleges that

the circuit court "attempted to render [her obligation] non-dischargeable in bankruptcy by falsely characterizing it as support." She emphasizes that the ruling left her with no place to live and in "substantial" debt. Finally, wife contends that the circuit court failed to consider the relevant statutory factors under Code § 20-107.3(E).

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of this rule 'is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.'" *Yazdani v. Sazegar*, 76 Va. App. 261, 276 (2022) (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 218 (2004)). Although wife sought vacatur and reconsideration of the final decree of divorce, she did not raise the specific arguments below that she now raises on appeal. "If a party fails to timely and specifically object, [s]he waives h[er] argument on appeal." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022). Moreover, with respect to her equitable distribution arguments, wife does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not consider the exceptions sua sponte. *Friedman v. Smith*, 68 Va. App. 529, 544 (2018). Accordingly, this Court will not consider wife's equitable distribution arguments. "Even *pro se* litigants must comply with the rules of court." *Francis v. Francis*, 30 Va. App. 584, 591 (1999).

### III. Support

Similarly, wife's arguments regarding the circuit court's support awards were not preserved for appeal. Although wife requested an order requiring husband to show cause "why he should not be fined and/or imprisoned for his failure to pay spousal support" when he failed to comply with the pendente lite order, wife did not present evidence or argument at the final hearing regarding her

request for permanent spousal support. For the first time on appeal, wife claims that she was "unable to find a job that paid more than the low hourly rate she was receiving" and that her expenses exceeded her income. She also argues that the circuit court erred by imputing $60,000 as income to her when it received no testimony from a vocational expert.[15] "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)); *see also* Rule 5A:18. This Court, therefore, does not consider these arguments.[16]

Finally, wife argues that the circuit court erred in accepting husband's testimony about his finances. She contends that "his submissions" to the circuit court were "patently fraudulent and false." She alleges that husband was not "losing money" with his law practice and had more income than reported. Wife claims that she had "[n]o opportunity to object" and presumably asks this Court to consider her arguments regarding husband's testimony under the good cause exception to Rule 5A:18. This record does not support wife's contention. The circuit court stated that the purpose of the hearing when husband presented the final decree of divorce for entry was to give wife "a chance to either endorse the decree or object to the entry of the decree." The transcript does not reflect the arguments wife now raises. Moreover, none of wife's post-trial motions raised these specific arguments with the circuit court. Therefore, the good cause exception does not apply, and Rule 5A:18 prevents this Court from considering wife's arguments on appeal.

---

[15] The record reflects that the circuit court imputed $30,000, not $60,000, as income to wife for child support purposes.

[16] In addition, wife contends that the circuit court did not consider the spousal support factors enumerated in Code § 20-107.1(E). Notwithstanding wife's failure to raise this issue with the circuit court, the final decree of divorce reflects that the circuit court considered the statutory factors and found that wife was "able to support herself and contribute to the support of the parties' three minor children if she chooses to make the effort to do so." Accordingly, this argument is not considered further.

IV. Custody and Visitation

Finally, wife argues that the circuit court erred by not considering custody and visitation because, under Code § 16.1-244(A), the JDR court was divested of jurisdiction once the divorce proceeding began. "Statutory interpretation is a question of law which we review *de novo*, and we determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Friedman*, 68 Va. App at 539 (quoting *Grafmuller v. Commonwealth*, 57 Va. App. 58, 61 (2010)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Kozmina v. Commonwealth*, 281 Va. 347, 349 (2011)). Further, we "consider[] . . . the entire statute" so as to "place its terms in context" "because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Id.* (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)). We are not to interpret a statute "by singling out a particular phrase." *Id.* at 426 (quoting *Eberhardt*, 283 Va. at 195). We are "to give effect, if possible, to every word of the written law." *Heart v. Commonwealth*, 75 Va. App. 453, 468 (2022) (quoting *Burnette v. Commonwealth*, 194 Va. 785, 788 (1953)).

On February 17, 2021, husband filed the complaint for divorce in the circuit court and requested that the circuit court grant him legal and physical custody of the parties' minor children. On March 26, 2021, wife filed her answer, counterclaim, and a motion for pendente lite relief. On March 30, 2021, wife filed her notice of the pendente lite hearing, scheduled for April 30, 2021. Accordingly, no hearing on the custody and visitation matter was scheduled until 41 days after the divorce proceeding began in the circuit court.

- 13 -

Code § 16.1-241(A)(3) provides that the juvenile and domestic relations district courts have jurisdiction over custody and visitation matters and their jurisdiction "shall be concurrent with and not exclusive of courts having equity jurisdiction, except as provided in § 16.1-244." "Generally, under this statutory scheme, the juvenile courts have exclusive original jurisdiction in custody cases *unless and until the circuit courts assume jurisdiction*." *Peple v. Peple*, 5 Va. App. 414, 418 (1988) (emphasis added). "The circuit courts may assume jurisdiction either by an appeal from the juvenile courts or by the direct filing of an appropriate proceeding in the circuit courts." *Id.* Circuit courts have concurrent jurisdiction "to determine" issues of child custody and visitation when those matters are "incidental to the determination of causes pending" in the circuit courts. Code § 16.1-244(A) (2020 Repl. Vol.).[17] The JDR court, however, is divested of jurisdiction to "enter

[17] In 2023 the General Assembly amended Code § 16.1-244(A). Accordingly, the relevant statute at issue in this case is Code § 16.1-244(A) (2020 Repl. Vol.) as it was the law in effect at the time this case was decided by the circuit court. *See City of Charlottesville v. Payne*, 299 Va. 515, 531 (2021) (recognizing that statutes do not apply retroactively unless the General Assembly expressly manifests an intent for retroactive application). Code § 16.1-244(A) (2020 Repl. Vol.) first states that "[n]othing contained in this law shall deprive any other court of the concurrent jurisdiction to determine . . . the custody, guardianship, visitation or support of children when such . . . is incidental to the determination of causes pending in such courts[.]" It then goes on to provide, in relevant part:

> However, when a suit for divorce *has been filed* in a circuit court, in which the custody, guardianship, visitation or support of children of the parties or spousal support is raised by the pleadings *and* a hearing, including a pendente lite hearing, is set by the circuit court on any such issue for a date certain or on a motions docket to be heard *within 21 days of the filing*, the juvenile and domestic relations district courts shall be divested of the right to enter any further decrees or orders to determine custody, guardianship, visitation or support when raised for such hearing and such matters shall be determined by the circuit court unless both parties agreed to a referral to the juvenile court.

*Id.* (emphases added). Notwithstanding the 2023 legislative amendment, in her brief wife relies on a much older version of Code § 16.1-244(A) which reads:

> However, when a suit for divorce has been filed in a circuit court and the custody, guardianship, visitation or support of children of

- 14 -

any further decrees or orders" only "when a suit for divorce has been filed in a circuit court" in which child custody or visitation issues have been raised "*and* a hearing, including a pendente lite hearing, is set by the circuit court on any such issue for a date certain or on a motions docket to be heard *within 21 days of the filing*." *Id.* (emphases added).

Wife argues that Code § 16.1-244(A) divested the JDR court of jurisdiction once husband filed his complaint for divorce and the pendente lite hearing was scheduled. Based on its reading of the plain language in the statute, this Court disagrees.

The plain language of Code § 16.1-244(A) (2020 Repl. Vol.) considers both when custody and visitation is raised by the pleadings *and* when a hearing date is set.[18] The JDR court is not divested of jurisdiction unless both of these requirements are satisfied. Here, the first condition was met when husband filed his suit for divorce on February 17, 2021. In his pleadings, husband explicitly raised issues of child custody and visitation, thereby starting Code § 16.1-244(A)'s 21-day clock. By the time wife filed her counterclaim, the issue of custody and visitation was

---

the parties or spousal support is at issue, the juvenile and domestic relations district courts shall be divested of the right to enter any further decrees or orders and such matters shall be determined by the circuit court . . . .

*Peple*, 5 Va. App. at 418-19 (quoting Code § 16.1-244(A) (1987 Cum. Supp.)) (emphasis omitted). This prior version of Code § 16.1-244(A) was in effect in the 1980s and was the statutory language interpreted in *Peple*, 5 Va. App. at 418-19—the case on which wife's argument primarily relies. Notably, that version contains no requirement for divestiture other than the filing of a suit for divorce in which custody of the children "is at issue." Thus, this Court will not consider wife's arguments in the context of this outdated language. Instead, this Court considers only whether the language of the statute in effect in 2021 served to divest the JDR court of jurisdiction over matters of child custody between the parties.

[18] This Court clarifies that the timing requirement in Code § 16.1-244(A) does not require the circuit court to hold a hearing within 21 days of the initial filing; rather, such hearing on the raised issues of child custody need only be scheduled within those 21 days for a date certain, regardless of whether that date falls outside the 21-day period.

already at issue, having been raised by pleading on February 17, 2021. It is, therefore, immaterial that wife's counterclaim also involved matters of child custody.

Within those 21 days from when husband filed his suit for divorce, in which he raised claims of child custody and visitation, the circuit court did not set a hearing "on any such issue for a date certain or on a motions docket[.]" Code § 16.1-244(A) (2020 Repl. Vol.). Indeed, the first hearing date was noticed by wife on March 30, 2021—41 days after husband filed for divorce and raised the issues of child custody. Because the record establishes that the second required condition of Code § 16.1-244(A) was not met, the circuit court had no authority under that statute to divest the JDR court of jurisdiction; it could merely choose how to exercise its own concurrent jurisdiction. *See* Code § 16.1-241(A)(3). Accordingly, the circuit court did not err in ordering that the custody and visitation matters remain in the JDR court.[19]

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.[20]

*Affirmed.*

---

[19] "[T]he filing of a suit for divorce in which custody is an issue divests the juvenile court of jurisdiction to enter *further* orders; however, the juvenile court may enforce its *prior* orders until the circuit court enters an order relating to custody." *Peple*, 5 Va. App. at 419 (first emphasis added). "Unlike an appeal, the divestiture provisions of Code § 16.1-244(A) do not annul the judgment of the juvenile court as if no previous hearing occurred." *Id.* at 421. Therefore, not only did the JDR court retain jurisdiction to enforce the existing custody order between the parties here, but it also retained jurisdiction over such child custody matters "to enter any further decrees or orders to determine custody, guardianship, visitation or support[.]" Code § 16.1-244(A) (2020 Repl. Vol.).

[20] Wife has filed two motions asking this Court to utilize specific language in an order vacating all lower court orders in this matter. Because this Court affirms the circuit court's judgment entirely, there is no order vacating lower court judgments and wife's motions are moot.

Chaney, J., concurring in part, and dissenting in part.

I agree with the majority's conclusion that any error in the circuit court's GAL and committee appointments is harmless, and the circuit court's equitable distribution and support rulings were not preserved. However, under Code § 16.1-244(A), the circuit court's refusal to address the parties' child custody and visitation issues was error. Therefore, I would remand the case to the circuit court to resolve the matters of child custody and visitation without considering the other issues resolved in the divorce decree to avoid encouraging piecemeal appeals when a circuit court leaves important issues unresolved.

BACKGROUND

Husband filed for divorce on February 17, 2021, and wife answered by counterclaiming on March 26, 2021. They both sought resolution of child custody, visitation, and support issues. Husband's complaint requests that he "be granted legal and physical custody of the parties' minor children with [wife] receiving appropriate parenting time . . . ." Wife's complaint requests that husband's requested relief be denied and "states that it is in the best interest of the minor children that [wife] be awarded legal and physical custody of the minor children, with visitation awarded to [husband] based on the best interests of the minor children." Wife filed a "Motion for Pendente Lite Relief" on March 26, 2021, requesting, among other things, that "the [circuit] court address the issue of Custody and Visitation pendente lite as soon as possible." Husband opposed and moved for a referral of child custody and visitation issues to the JDR court.

The circuit court set a WebEx hearing on the pending motions within 21 days of wife's counterclaim, for April 13, 2021. At the hearing, wife rejected husband's proposed referral to the JDR court. After the hearing, the circuit court held:

> This Court hereby declines to hear the custody and visitation
> matters pertaining to the minor children because those matters are
> being litigated in the Lynchburg Juvenile & Domestic Relations

- 17 -

District Court. Those matters shall remain in the Juvenile &
Domestic Relations District Court for the City of Lynchburg.

Wife objected to the order on the ground that the JDR court was divested of jurisdiction by the pendente lite hearing. As for the child custody and visitation issues raised by husband's and wife's complaints, the circuit court held in its divorce decree:

> The Court further FINDS that the custody and visitation of the minor children has been determined by the Juvenile and Domestic Relations District Court for the City of Lynchburg, which Order is on appeal to the Circuit Court for the City of Lynchburg to be heard by Judge Peatross, who has been designated by the Supreme Court of Virginia to hear those matters [because of a conflict] . . . .

Divorce Decree ¶ 9.

## ANALYSIS

The circuit court originally had concurrent jurisdiction with the JDR court to resolve the parties' child custody and visitation dispute encompassed within their divorce complaints. However, that jurisdiction became exclusive when the circuit court set an April 13 hearing on wife's pending pendente lite motion. *See* Code § 16.1-244(A). Code § 16.1-244, as effective at the time, provided:

> However, when a suit for divorce has been filed in a circuit court, in which the custody, guardianship, visitation or support of children of the parties or spousal support is raised by the pleadings and a hearing, including a pendente lite hearing, is set by the circuit court on any such issue for a date certain or on a motions docket to be heard within 21 days of the filing, the juvenile and domestic relations district courts shall be divested of the right to enter any further decrees or orders to determine custody, guardianship, visitation or support when raised for such hearing and such matters shall be determined by the circuit court unless both parties agreed to a referral to the juvenile court.

2003 Va. Acts ch. 129.

On March 26, 2021, wife filed a counter-claim divorce complaint and a motion for pendente lite relief requesting that the circuit court resolve child custody and visitation issues.

- 18 -

Husband opposed wife's motion for pendente lite relief, requesting instead that the child custody and visitation issues be referred to the JDR court, since the JDR court had previously entered a temporary order relating to child custody and visitation. The circuit court docketed a hearing on the pending motions for April 13—well within 21 days of wife's March 26 counter-claim divorce and pendente lite filings. Even though the JDR court's temporary orders remained in place, once the circuit court assumed jurisdiction by setting a hearing upon wife's filings, the twenty-one-day rule of Code § 16.1-244 divested the JDR court of jurisdiction "of the right to enter any further decrees or orders to determine [child] custody[] [or] visitation." Code § 16.1-244(A).

The circuit court setting the hearing within 21 days of wife's counter-claim divorce and pendente lite filings, including child custody and visitation claims, was the statutory triggering event for divesting the JDR court's jurisdiction. Therefore, the circuit court was required to determine child custody and visitation unless "*both* [husband and wife] agreed to a referral to the juvenile court." 2003 Va. Acts ch. 129 (emphasis added). At the April 13 hearing, wife declined to refer child custody and visitation matters to the JDR court, and therefore, no agreement existed between the parties for the referral. At that time, the circuit court *had* to address child custody and visitation. Thus, the circuit court erred when it refused to do so.

Accordingly, I would reverse the circuit court's ruling, vacate the divorce decree, and remand the matter for the circuit court to address and resolve the child custody and visitation and reconsider other issues, including at least child support.