COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Chief Judge Decker, Judge Friedman and Senior Judge Clements
Argued at Richmond, Virginia


RASHEED DANIEL FLEMING, S/K/A
  RASHEED N. FLEMING

v.       Record No. 0867-24-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JEAN HARRISON CLEMENTS
JUNE 10, 2025

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Claire G. Cardwell, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


The trial court convicted Rasheed Daniel Fleming of possessing a machine gun for an offensive or aggressive purpose in violation of Code § 18.2-290, which is part of the Virginia Uniform Machine Gun Act (the Act). On appeal, he argues that the Act violated his right to keep and bear arms under the Second Amendment of the Constitution of the United States, is void for vagueness, and contains unconstitutional burden-shifting presumptions. He also contends that the trial court erred by "failing to determine" whether the Act includes a mens rea element for unlawful possession of a machine gun. The Second Amendment, however, does not protect the right to possess dangerous and unusual weapons like machine guns, and Fleming's arguments demonstrate no constitutional defect in the Act or other reversible error. Accordingly, the trial court's judgment is affirmed.

BACKGROUND

In July 2023, two Richmond police officers were on patrol when they saw Fleming, who was not a convicted felon but had an unserved felony warrant, walk into a convenience store while carrying a "black grocery bag." The officers followed Fleming into the store, detained him, and found "a Glock 22 handgun with an extended magazine" in the grocery bag. After further inspection, police realized that the handgun was equipped with a "switch" that "allows a semi-automatic firearm to operate as a fully automatic weapon." During testing at the Virginia Department of Forensic Science, the handgun was operable and "fired in full-automatic mode."

A grand jury indicted Fleming for unlawfully possessing a machine gun for an offensive or aggressive purpose, in violation of Code § 18.2-290. Before trial, Fleming moved the court to dismiss the indictment "on constitutional grounds." He argued that Code § 18.2-290 was unconstitutional both facially and as applied under the Second and Fourteenth Amendments of the Constitution of the United States and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). He asserted that his conduct was constitutionally protected, to the same extent as "carry[ing] a regular gun or a rifle," so the Commonwealth had the burden of demonstrating that Code § 18.2-290 was "consistent with our nation's history and tradition" of firearm regulation. He maintained that the Second Amendment protected "arms" even if they were not "in existence in the 18th century," and regardless of whether they are "useful in warfare."

In a separate motion, Fleming moved to dismiss the indictment on the ground that Code § 18.2-290 and the Act were "void for vagueness." He maintained that Code § 18.2-290 was "so overly broad, vague and ambiguous" that it failed to give a citizen of "ordinary intelligence" the "notice" necessary to satisfy due process. He argued that the Act does not define "aggressive" or "offensive." Instead, additional statutes, including Code § 18.2-291, must be cross-referenced "to educate oneself on what an aggressive purpose is." He asserted that viewing the Act's provisions as

a whole, there were "too many windows of opportunity for arbitrary, capricious, and discriminatory leveraging and arresting by officers who may not . . . be going through the[] various code sections." At a hearing on his motions, Fleming added that Code § 18.2-290 "does not have a clear mens rea element" and asked the court to determine what, if any, mens rea the Commonwealth had to prove to sustain a conviction. Moreover, he argued that Code § 18.2-291, which identifies certain circumstances under which it is "presumed" that a defendant possessed a machine gun for an offensive or aggressive purpose, unconstitutionally relieved the Commonwealth of the burden of proving the elements of the offense.

After further hearings and briefing, the trial court issued a letter opinion denying Fleming's motions to dismiss. First, the court found that the Act did not violate Fleming's right to keep and bear arms because machine guns are "dangerous and unusual weapons" and not in "common use," representing less than 0.2% of all firearms in the United States. Alternatively, the court found that the Act did not violate Fleming's rights because it proscribed only possession or use of a machine gun for an offensive or aggressive purpose, which adhered to our Nation's history of firearm regulation.

Next, the court found that the Act was not "void for vagueness as applied" to Fleming because he possessed a machine gun in a convenience store that he neither owned nor rented, which was presumed to be for an "offensive or aggressive" purpose under Code § 18.2-291.[1] Finally, the

---

[1] The Act provides four circumstances in which it "shall be presumed" that possession or use of a machine gun is for an offensive or aggressive purpose:

    (1) When the machine gun is on premises not owned or rented for bona fide permanent residence or business occupancy by the person in whose possession the machine gun may be found;

    (2) When the machine gun is in the possession of, or used by, a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions;

court ruled that Code § 18.2-291's presumptions were rebuttable, not mandatory, and did not shift the ultimate burden of proof away from the Commonwealth. The court reasoned that there was a "natural and rational evidentiary connection between a firearm which is designed to expel many rounds of ammunition as quickly as possible being possessed in a public place and that possession being for an offensive or aggressive purpose" and that the "same connection applies" to "a person being in possession of such weapon without having registered it properly" and "with ammunition (whether just fired or yet to be fired) in the immediate vicinity." The trial court declined to rule on whether Code § 18.2-290 included a mens rea requirement or created a strict liability offense. The court found that while the mens rea would have to be "addressed at trial" when giving jury instructions, it did not need to resolve the question to resolve the pre-trial motions.

Fleming entered a conditional no contest plea, preserving his right to appeal the trial court's rulings. The court accepted his plea and sentenced him to ten years' incarceration with nine years suspended. Fleming appeals.

ANALYSIS

We review de novo whether a defendant's constitutional rights have been violated. *Walker v. Commonwealth*, 302 Va. 304, 314 (2023) (citing *Ashland, LLC v. Va.-Am. Water Co.*, 301 Va. 362, 368 (2022)). Challenging a statute as unconstitutional is a daunting task, as "all actions of the General Assembly are presumed to be constitutional." *Montgomery Cnty. v. Va. Dep't of Rail & Pub. Transp.*, 282 Va. 422, 435 (2011) (quoting *Copeland v. Todd*, 282 Va. 183, 193 (2011)). Indeed, there is "no stronger presumption known to the law." *Id.* (citing *FFW Enters. v. Fairfax*

---

(3) When the machine gun has not been registered as required in § 18.2-295; or
(4) When empty or loaded shells which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof.

Code § 18.2-291.

- 4 -

*Cnty.*, 280 Va. 583, 590 (2010)). Accordingly, "any reasonable doubt regarding a statute's constitutionality" must be resolved "in favor of its validity." *Id.* (quoting *Supinger v. Stakes*, 255 Va. 198, 202 (1998)). In addition, the "party challenging an enactment has the burden of proving that the statute is unconstitutional." *FFW Enters.*, 280 Va. at 590 (quoting *Marshall v. N. Va. Transp. Auth.*, 275 Va. 419, 428 (2008)). We also review a circuit court's interpretation of statutes de novo. *Walker*, 302 Va. at 321 (citing *Jones v. Williams*, 280 Va. 635, 638 (2010)).

## I. Second Amendment[2]

"A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. That Amendment is composed of a "prefatory clause and its operative clause." *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008). "The former does not limit the latter grammatically, but rather announces a purpose." *Id.* Indeed, beyond merely "preserving the militia," the "ancient right" to keep and bear arms is also concerned with preserving "self-defense and hunting." *Id.* at 599. In fact, "individual self-defense is . . . the *central component* of the right itself"; thus, the Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 599, 635. Under that interpretation of the Second Amendment, *Heller* struck down a District of Columbia law that prohibited possession of handguns in the home. *Id.* at 573, 635-36.

Yet "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. Indeed, a line of recent United States Supreme Court cases beginning with *Heller* have repeatedly instructed "that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*; *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S.

---

[2] Fleming's assignment of error alleges a violation of his rights under the federal Constitution only. Thus, this opinion does not address the Virginia Constitution. *See Salahuddin v. Commonwealth*, 67 Va. App. 190, 210 (2017) (holding that "consideration on appeal" is limited to "'the scope of [the] assignment of error'" (quoting *Smith v. Commonwealth*, 65 Va. App. 288, 302-03 (2015))).

at 626); *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (quoting *Heller*, 554 U.S. at 626);

*McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. at 626).

*Heller* explicitly stated, for example, that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." 554 U.S. at 626. Consistent with that guidance, we recently upheld Code § 18.2-308.2, the Commonwealth's felon in possession of a firearm statute, against a Second Amendment challenge. *Ginevan v. Commonwealth*, 83 Va. App. 1, 28 (2024); *see also Watkins v. Commonwealth*, 83 Va. App. 456, 463 (2025) (upholding Code § 18.2-308.4, which proscribes possessing a firearm while possessing a controlled substance).

"[A]nother important limitation on the right to keep and carry arms" is that it applies to the "sorts of weapons . . . 'in common use at the time.'" *Heller*, 554 U.S. at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). "[T]hat limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* (quoting 4 William Blackstone, Commentaries on the Laws of England 148-49 (1769)). Indeed, since at least 1939, the Court has recognized "that the Second Amendment right . . . extends only to certain types of weapons." *Id.* at 623; *Miller*, 307 U.S. at 177. In *Miller*, the United States Supreme Court rejected a Second Amendment challenge to a federal indictment for transporting an unregistered short-barreled shotgun in interstate commerce, in violation of the National Firearms Act. 307 U.S. at 175, 182-83. The Court held that absent "any evidence tending to show that the possession or use of a" short-barreled shotgun "has some reasonable relationship to the preservation or efficiency of a well-regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear *such an instrument*." *Id.* at 178 (emphasis added); *see also Heller*, 554 U.S. at 621-22 (explaining *Miller*'s holding). The Court reasoned that a short-barreled shotgun was not a "part of

the ordinary military equipment" and could not "contribute to the common defense." *Miller*, 307 U.S. at 178.

*Heller* clarified, however, that "*Miller*'s phrase 'part of ordinary military equipment'" should not be understood to "mean that only those weapons useful in warfare are protected." *Heller*, 554 U.S. at 622 (quoting *Miller*, 307 U.S. at 178). "That would be a *startling* reading of [*Miller*], since it would mean that the National Firearm Act's restrictions on *machineguns* (not challenged in *Miller*) might be unconstitutional, machineguns being useful in warfare in 1939." *Id.* at 624 (emphases added). Eschewing any suggestion that machine guns might be constitutionally protected, the Court emphasized that the "traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense," and that during the revolutionary war era, small-arms weapons "'used by militiamen and weapons used in defense of person and home were one and the same.'" *Id.* at 624-25 (quoting *State v. Kessler*, 614 P.2d 94, 98 (Ore. 1980)). Accordingly, the Court concluded that "the Second Amendment does *not* protect those weapons *not* typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625 (emphases added).

Following *Heller*, federal courts "implemented a two-step approach to analyzing Second Amendment challenges, ending with the application of what came to be known as 'means-ends' scrutiny." *Ginevan*, 83 Va. App. at 8 (quoting *Bruen*, 597 U.S. at 17). "At the first step," courts asked whether a challenged law regulated conduct "outside the scope of the right." *Bruen*, 597 U.S. at 18. Next, courts considered whether the challenged law could survive strict or intermediate constitutional scrutiny depending on how close the conduct was to the "core of the Second Amendment right." *Id.*

In *Bruen*, however, the United States Supreme Court rejected that "two-step approach" as "one step too many." *Id.* at 19. The Court acknowledged that the first step was "broadly consistent

with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history."

*Id.* But the Court rejected application of "means-ends scrutiny in the Second Amendment context."

*Id.* Instead, the Court held:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). In applying that test, courts must generally ask whether the defendants "are part of 'the people' whom the Second Amendment protects," the weapon is "'in common use today'" for lawful purposes, and the Second Amendment "protects" the "proposed course of conduct." *Id.* at 31-32 (quoting *Heller*, 445 U.S. at 580, 627); *Ginevan*, 83 Va. App. at 9. Once it is determined that conduct is within the scope of the Second Amendment right, examining the "historical tradition of firearm regulation" helps to delineate the contours of the protection. *Rahimi*, 602 U.S. at 691.

Crucially, *Bruen* did not overturn or alter *Heller*, only lower courts' misapplication of *Heller*. 597 U.S. at 23-24. Indeed, *Bruen* "reiterate[d]" that *Heller*'s standard "relied on the historical understanding of the [Second] Amendment to demark the limits on the exercise of that right," and the Court merely was "apply[ing]" the test that it had established "in *Heller*." *Id.* at 21, 24, 26. Further, as noted above, *Bruen* also repeated *Heller*'s direction that the right to keep and bear arms did not extend to "any weapon whatsoever in any manner whatsoever and for whatever purpose" and that the historical tradition prohibited "the carrying of 'dangerous and unusual weapons.'" *Id.* at 21 (quoting *Heller*, 554 U.S. at 626-27).

On that point, in *Heller*, the Supreme Court twice specifically referenced machine guns as an example of a "type of weapon" that was *not* "in common use" and did not enjoy the constitutional protection. First, the Court suggested that certain weapons "useful in military service—M-16 rifles[3] and the like—may be banned" even though doing so could imply that "the Second Amendment right is completely detached from the prefatory clause." *Heller*, 554 U.S. at 627. Second, as noted above, the Supreme Court explicitly eschewed any reading of *Miller* to suggest that machine guns are constitutionally protected. *Id.* at 624. Although *Heller* did not involve a machine gun, both of those references to automatic firearms illuminate the Court's view that they are a type of weapon that may be banned without burdening Second Amendment rights because they are not in common use for lawful purposes like self-defense. *See Hengle v. Treppa*, 19 F.4th 324, 346 (4th Cir. 2021) (cautioning that lower courts "cannot ignore the [United States] Supreme Court's explicit guidance simply by labeling it 'dicta'").

Machine guns have been recognized as "weapons used principally by persons engaged in *unlawful* activities." *Haynes v. United States*, 390 U.S. 85, 87 (1968) (emphasis added) (interpreting the National Firearms Act, which taxed only "certain classes of firearms," including "machine guns and other automatic firearms," that Congress had determined were "used principally by persons engaged in unlawful activities"). Elsewhere, the United States Supreme Court described "machineguns, sawed-off shotguns, and artillery pieces" as having "the same quasi-suspect character [the Court] attributed to owning hand grenades." *Staples v. United States*, 511 U.S. 600, 611-12 (1994). They "are primarily weapons of war and have no appropriate sporting use or use for personal protection." *State v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (citing S. REP. No.

---

[3] "The archetypal modern 'machinegun' is the military's standard-issue M16 assault rifle." *Garland v. Cargill*, 602 U.S. 406, 432 (2024) (Sotomayor, J., dissenting). "Semiautomatic firearms, which require shooters to reengage the trigger for every shot, are not machineguns." *Id.* at 410.

90-1501, at 28 (1968)); *see also Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) (holding that under *Heller* "machine guns, and weapons especially attractive to criminals" were "military-grade weapons" not subject to the Second Amendment's protection).

Machine guns also pose "immense danger" to the public. *United States v. O'Brien*, 560 U.S. 218, 230 (2010). "With an M16 in automatic mode," for example, "the shooter pulls the trigger once to achieve a fire rate of 700 to 950 rounds per minute." *Garland v. Cargill*, 602 U.S. 406, 432 (2024) (Sotomayor, J., dissenting). *See also United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) (observing that the "modern machine gun can fire more than 1,000 rounds per minute" (citing George C. Wilson, *Visible Violence*, 12 NAT'L J. 886, 887 (2003))). "Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are *more* dangerous than machine guns." *Id.* (emphasis added) (citing Wilson, *Visible Violence*, 887). Certainly, they are "terrifying [to] the good people of the land." 4 Blackstone, Commentaries 149.[4]

Consistent with the above authorities, we hold that machine guns[5] are dangerous and unusual weapons that are not protected under the Second Amendment. *See United States v.*

---

[4] Like Code §§ 18.2-290 and -291, which generally proscribe "possession or use of a machine gun for an offensive or aggressive purpose," including leaving your home or place of business, Blackstone wrote that "[t]he offence of riding or going armed, with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land." 4 Blackstone, Commentaries 149. "In like manner as by the laws of Solon, every Athenian was finable who walked about the city in armour." *Id. See also O'Neill v. State*, 16 Ala. 65, 67 (Ala. 1849) (holding that a person may be guilty of an "affray" in public, even "without coming to actual blows," if he arms himself "with deadly or unusual weapons for the purpose of an affray"); *State v. Langford*, 10 N.C. 381, 383-84 (N.C. 1824) ("[I]t seems certain there may be an affray when there is no actual violence: as when a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people; which is said always to have been an offence at common law.").

[5] Although Fleming contends that the firearm he possessed was a "handgun," which was "given explicit protection in *Heller*," he does not contest that it was also a machine gun under the Act. *See* Code § 18.2-288 (defining a "[m]achine gun" as "any weapon which shoots or is designed to shoot automatically more than one shot, without manual reloading, by a single function of the trigger").

*Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) (holding that under *Heller* "[m]achine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use"); *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) (holding that "every one of our sister circuits that have addressed this issue have agreed that machineguns are dangerous and unusual weapons for the purposes of the Second Amendment"). Thus, the circuit court did not err by denying Fleming's motion to dismiss the indictment on the ground that Code § 18.2-290 violated his Second Amendment rights.[6]

## II. Void for Vagueness

"No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The government "violates" that "guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Shin v. Commonwealth*, 294 Va. 517, 525 (2017) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)). "[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Id.* (alteration in original) (quoting *Nat'l Dairy*, 372 U.S. at 32).

Consistent with those principles, a statute is not "unconstitutionally vague" unless "'it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or

---

[6] Having concluded that the Second Amendment does not encompass Fleming's conduct, we need not consider whether Code § 18.2-290 is consistent with this Nation's history of firearm regulation. *Bruen*, 597 U.S. at 24.

leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.'" *Id.* at 525-26 (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)). "Nor does a statutory standard lose its constitutional moorings by drawing some rather fine lines." *Stoltz v. Commonwealth*, 297 Va. 529, 535 (2019). "After all, 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Id.* (alteration in original) (quoting *Johnson v. United States*, 576 U.S. 591, 604 (2015)). The "vagueness doctrine recognizes that legislatures encounter 'practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.'" *Santillo v. Commonwealth*, 30 Va. App. 470, 483 (1999) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).

In addition, "one to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Tjan v. Commonwealth*, 46 Va. App. 698, 709 (2005) (quoting *Commonwealth v. Hicks*, 267 Va. 573, 581 (2004)). *See also Muhammad v. Commonwealth*, 269 Va. 451, 501 (2005) ("One who engages in conduct that is clearly proscribed and not constitutionally protected may not successfully attack a statute as void for vagueness based upon hypothetical conduct of others." (citing *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494-95 (1982))). Thus, we have held that a statute was "not unconstitutionally vague" when it gave the defendant "reasonable notice that *his* conduct" was within its "ambit." *Santillo*, 30 Va. App. at 484 (emphasis added).

Fleming's opening brief contains no argument that the Act is vague as applied to him. Instead, he attacks the Act generally, arguing that Code § 18.2-290 is vague because a citizen would have to consult multiple, distinct statutes to determine what conduct is proscribed. He laments that the Act is structured under a "takeaway and giveback framework" that does not

define, among other things, "an aggressive or offensive purpose" as opposed to a "scientific purpose" or "manifestly not an aggressive or offensive purpose." *See* Code § 18.2-293.1(1)-(2) (providing that the Act does not proscribe "possession of a machine gun for scientific purposes" or "for a purpose manifestly not aggressive or offensive"). He does not contend, however, that any of the Act's carve-outs applied to him, only that "a citizen of ordinary intelligence must hazard a guess as to whether" his conduct violates the Act. Fleming's failure to argue that the Act is impermissibly vague as applied to his conduct fatally undermines his remaining arguments that the Act is unconstitutionally vague in the abstract. *See Bartley v. Commonwealth*, 67 Va. App. 740, 745-46 (2017) (holding that under Rule 5A:20(e) we cannot "construct a litigant's case or arguments for him or her" (quoting *Sneed v. Bd. of Prof'l Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010))).

In addition, the plain language of the Act "clearly applies" to Fleming's conduct. *Tjan*, 46 Va. App. at 709 (quoting *Hicks*, 267 Va. at 581). Code § 18.2-290 provides that the "[u]nlawful possession or use of a machinegun for an offensive or aggressive purpose is . . . a Class 4 felony." "Possession or use of a machine gun shall be presumed to be for an offensive or aggressive purpose" if (1) "the machine gun is on the premises not owned or rented for bona fide permanent residence or business occupancy by the person" possessing the weapon, (2) "the machine gun is in the possession of . . . a person who has been convicted of a crime of violence," (3) "the machine gun has not been registered as required in § 18.2-295," or (4) "empty or loaded shells which have been or are susceptible of use in the machine gun are found in the immediate vicinity thereof." Code § 18.2-291.

Fleming possessed a Glock handgun which had been modified to operate as a fully automatic weapon. He was in a convenience store that he did not own or rent. The handgun was loaded with ammunition in an extended magazine. And as the Commonwealth proffered below, the

handgun was not registered under Code § 18.2-295. Thus, Fleming's specific conduct implicates three distinct circumstances enumerated in Code § 18.2-291, each independently sufficient to implicate the presumption that Fleming's possession of the machine gun was for an offensive or aggressive purpose. Code § 18.2-291(1), (3), (4). Accordingly, because Fleming had plain and unequivocal notice that his conduct violated Code § 18.2-290 he cannot successfully challenge the statute as unconstitutionally vague, and the trial court did not err by denying his motion.

### III. Presumptions

"Inferences and presumptions are elemental ingredients of the fact-finding process." *Yap v. Commonwealth*, 49 Va. App. 622, 631 (2007) (citing *Cnty. Ct. of Ulster Cnty., New York v. Allen*, 442 U.S. 140, 156 (1979)). "It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *Allen*, 442 U.S. at 156 (citing *Barnes v. United States*, 412 U.S. 837, 843-44 (1973)). Of course, the "Due Process Clause requires the prosecution to prove beyond a reasonable doubt every element necessary to establish the crime charged." *Yap*, 49 Va. App. at 632 (citing *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)). Yet that imperative "does not prohibit the use of a permissive inference as a procedural device that shifts to a defendant the burden of producing some evidence contesting a fact that may otherwise be inferred, provided that the prosecution retains the ultimate burden of proof beyond a reasonable doubt." *Id.* (citing *Allen*, 442 U.S. at 156).

We apply a "two-fold test" to ascertain "the validity of a statute making proof of one fact *prima facie* or presumptive evidence of another fact": (1) whether "there is a natural and rational evidentiary connection between the fact proved and the ultimate fact presumed," and (2) "whether the presumption is rebuttable." *Crenshaw v. Commonwealth*, 219 Va. 38, 42 (1978). Where an "evidentiary connection exists and the presumption is rebuttable, the statute" will be

"upheld against a due process attack." *Id.* (citing *Dooley v. Commonwealth*, 198 Va. 32, 34 (1956)).

The Virginia Supreme Court applied those considerations in upholding an earlier version of Code § 18.2-94, which provides that possession of "burglarious tools" is "prima facie evidence of an intent to commit burglary, robbery or larceny." The Supreme Court held that "it is unusual for a person, on a lawful mission, to have in his possession a combination of tools and implements suitable and appropriate to accomplish the destruction of any ordinary hinderance of access to any building, or to a vault or safe." *Burnette v. Commonwealth*, 194 Va. 785, 790 (1953). Thus, there is a rational connection between possession of burglarious tools and a criminal intent to use them. *See id.* The burglarious tools presumption was "not conclusive; it cut[] off no defense" and "interpose[d] no obstacle to a contest of all the issues of fact." *Id.* Rather, it was "'a rule of evidence,'" such that when "possession is proven, the burden of going forward with the evidence shifts to the defendant, but this does not shift the burden of ultimate proof." *Id.* at 790-91 (quoting *Barton v. Camden*, 147 Va. 263, 272 (1927)). Accordingly, the statutory presumption did not violate constitutional due process. *Id.*; *see also Freeman v. Commonwealth*, 223 Va. 301, 312 (1982) (holding that there were no "due process implications in a rebuttable presumption" that did "no more than shift the burden of going forward with the evidence").

Code § 18.2-291 similarly provides no conclusive or mandatory presumption. The statute lists four circumstances under which it "shall be presumed" that possession or use of a machine gun was "for an offensive or aggressive purpose," but those presumptions do not relieve the Commonwealth of proving any fact or element of the offense. *See Crenshaw*, 219 Va. at 41-42 (holding that a presumption was unconstitutional when it explicitly provided that the Commonwealth "need not prove" a relevant fact and therefore "exclude[d] from consideration any evidence" regarding that fact). Indeed, Code § 18.2-293.1(2) explicitly provides that regardless of

- 15 -

any presumption, the Act does not proscribe "possession of a machinegun for a purpose manifestly not aggressive or offensive." Thus, Code § 18.2-291 provides merely a "'rule of evidence'"; it "cuts off no defense" and imposes "no obstacle" to a factual dispute on whether possession or use of the machine gun was actually offensive or aggressive. *Burnette*, 194 Va. at 790 (quoting *Barton*, 147 Va. at 272).

In addition, there is a rational connection between the proved and presumed facts in Code § 18.2-291. As noted above, machine guns generally are recognized as "weapons used principally by persons engaged in *unlawful* activities." *Haynes*, 390 U.S. at 87 (emphasis added). They have the "same quasi-suspect character" as "hand grenades," *Staples*, 511 U.S. at 612, and "no appropriate sporting use or use for personal protection," *Jennings*, 195 F.3d at 799 n.4. Thus, there is a rational connection between the possession of such a weapon unsuited for personal protection outside of one's home or place of business—especially when it is unregistered and loaded—and an intent to use it for an aggressive or offensive purpose. *See Burnette*, 194 Va. at 790. Accordingly, we hold that Code § 18.2-291's rebuttable presumptions did not unconstitutionally burden Fleming's due process rights.

## IV. Mens rea

In denying Fleming's pre-trial motions to dismiss, the trial court concluded that it was unnecessary to determine *at that stage* whether Code § 18.2-290 included a "scienter element." The court acknowledged that the issue "would likely have to be addressed at trial and in the context of jury instructions." Yet on appeal, Fleming's argument does not squarely address the trial court's ruling. Instead, he devotes much of his brief to arguing that Code § 18.2-290 does not, in fact, create a strict liability offense. Then, he contends that the trial court's "evasion of the scienter issue relieved the Commonwealth of its required burden of proving the necessary facts for each element of the offense."

"An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court . . . from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient." Rule 5A:20(c)(ii). It is well-established that we "do not consider" assignments of error that "do not address a ruling made by the trial court." *Teleguz v. Commonwealth*, 273 Va. 458, 471 (2007). Any arguments that do not address the "basis upon which" the trial court made its ruling are waived. *Martin v. Lahti*, 295 Va. 77, 88-89 (2019). Here, the trial court's ruling did not "relieve" the Commonwealth of its burden of proof. In fact, the court reserved making a ruling until trial. Thus, Fleming's general argument that the statute contains a scienter element does not address the basis of the trial court's judgment.

Next, in a single sentence, Fleming argues that given the trial court's decision not to rule, "the circumstances surrounding [his] conditional plea hearing do not comport with basic due process requirements." But that argument is not preserved for appeal. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

At his plea hearing, Fleming did not object that he could not enter a plea consistent with his due process rights before the trial court ruled on whether Code § 18.2-290 was a strict liability offense. Rather, the record demonstrates that Fleming entered his conditional plea knowingly and voluntarily after discussing the charge with his attorney. He told the trial court that he "understood" the charge, including what the Commonwealth would have to prove to convict him, and he affirmatively asked the trial court to accept his written plea agreement with the Commonwealth. Accordingly, he did not preserve any argument that his plea did not "comport with basic due process." Although Rule 5A:18 has exceptions, Fleming does not invoke them in his opening brief, and we will not do so sua sponte. *Hogle v. Commonwealth*, 75 Va. App. 743, 756 (2022).

Finally, Fleming's brief also fails to satisfy Rule 5A:20(e), which requires an opening brief to contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley*, 67 Va. App. at 744 (citing *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). We apply this rule because "it is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Id.* at 746 (quoting *Sneed*, 301 S.W.3d at 615). Thus, "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Id.* (quoting *Sneed*, 301 S.W.3d at 615).

Although Fleming's brief contains significant argument and authority supporting his position that Code § 18.2-290 is not a strict liability offense, that argument does not address the trial court's actual ruling. Nor is that argument within the scope of Fleming's assignment of error, which specifically challenges the trial court's decision *not* to determine before trial whether the offense contained a "mens rea element." On that point, Fleming cites no legal authority other than a single cite for the proposition that the Commonwealth is required to prove every element of an offense

beyond a reasonable doubt. Fleming's argument rests on summary and unsupported statements that he was in a "predicament" and had to "guess" about the offense before deciding to plead guilty. We have long recognized that "the criminal process, like the rest of the legal system, is replete with situations requiring choices between various alternatives, each with its own benefits and disadvantages." *Randolph v. Commonwealth*, 45 Va. App. 166, 175 (2005). Fleming's conclusory laments are not a legal argument that the trial court erred by declining to rule on his motion before trial. Thus, the issue is waived.

CONCLUSION

For all these reasons, the circuit court's judgment is affirmed.

*Affirmed.*